**John D. PENN, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORP.,
et al., Defendants.**

**Ronald HIERMER, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL
CORP., Defendant.**

Nos. C-2-86-992, C-2-87-98.

United States District Court,
S.D. Ohio, E.D.

May 8, 1990.

James Scott Mowery, Jr., Mowery and Youell, Columbus, Ohio, for Ronald Hiermer.

John Leslie Onesto, Louis Abraham Jacobs, Columbus, Ohio, for John D. Penn.

John Wolcott Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, for Rockwell Intern. Corp.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is presently before the Court on defendant Hiermer's motion for partial summary judgment and defendant Rockwell International Corporation's motion for partial dismissal.

## STATEMENT OF FACTS

Plaintiff Penn filed this action, case number C-2-86-992, against defendants Rockwell and Hiermer, alleging that he suffered racial discrimination while employed at Rockwell. The original complaint alleged, and plaintiff's amended complaint alleges, that Penn was subjected to racial harassment by defendant Hiermer, his supervisor at Rockwell. Penn asserted claims under 42 U.S.C. § 1981, Title VII, and various state law theories. On February 3, 1987, Hiermer filed a related action against Rockwell, case number C-2-87-98, and on May 7, 1987 that case was consolidated with Penn's case for all pretrial purposes.

Defendants Rockwell and Hiermer each previously filed a motion for summary judgment. On October 18, 1988 the Court granted Hiermer's motion for summary judgment with regard to Penn's state law claims for slander and negligent infliction of emotional distress, but denied the motion as to the remaining claims. Similarly, summary judgment was granted in favor of Rockwell on the claims for slander and negligent infliction of emotional distress on September 1, 1989.

Penn moved to file a first amended complaint on August 31, 1989. In this motion

Penn sought leave to make three amendments to his complaint: (1) addition of a claim under Ohio Rev.Code § 4112.99; (2) deletion of the claims for slander and negligent infliction of emotional distress in light of the Court's rulings with respect thereto; and (3) revision of his claim under 42 U.S.C. § 1981 in light of the United States Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Magistrate granted Penn's motion, and Rockwell and Hiermer answered Penn's first amended complaint.

Defendant Hiermer has moved for partial summary judgment, and defendant Rockwell has moved for partial dismissal, on Penn's first cause of action to the extent it is based on Ohio Rev.Code § 4112.99. Defendants maintain that Penn may not assert a private cause of action under section 4112.99 for conduct which occurred, and for which the cause of action accrued, prior to the effective date of that statute. Additionally, defendant Rockwell moves for partial dismissal of Penn's second cause of action, based on 42 U.S.C. § 1981, on grounds that insofar as that cause is based on "retaliation in the form of harassment" it fails to state a claim for relief.

## DISCUSSION

### A. *OHIO REV.CODE § 4112.99*

The Court's consideration of the parties' arguments with respect to section 4112.99 is complicated by the fact that Hiermer's motion is a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(c), while Rockwell's motion is a motion for partial dismissal pursuant to Fed.R.Civ.P. 12(b)(6) as well as for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The standard to be applied by the Court is determined by the rule under which a motion is made. Here the Court is asked to apply three different standards to two separate motions which present the same legal argument. Further complicating the matter is plaintiff's memorandum in opposition to defendants' motions, which purports to respond to defendants' motions as if they are motions to dismiss, and asks that the

Court treat them as such, yet cites to and relies upon exhibits submitted in response to an earlier motion for summary judgment. In any event, the question presented is a legal question as to whether Ohio Rev.Code § 4112.99 can be applied retroactively, and in the Court's view resolution of this question does not depend on whether the Court considers defendants' motions under Rule 56, Rule 12(b)(6), or Rule 12(c).

Ohio Rev.Code § 4112.99, effective September 28, 1987, provides:

> Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

The question presented is whether plaintiff can maintain a cause of action under section 4112.99 for conduct which occurred prior to the effective date of that statute. Defendants argue that such retroactive application is prohibited under Ohio Rev.Code § 1.48 and the analysis set forth in the Ohio Supreme Court's decision in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988). Plaintiff's response is two-fold: (1) the *Van Fossen* analysis should not be applied to determine the retroactivity of a statute enacted prior to that decision, and under the analysis prevailing prior to *Van Fossen* section 4112.99 should be applied retroactively because it is remedial legislation; and (2) notwithstanding *Van Fossen*, Ohio Rev. Code § 1.58(B) mandates that section 4112.-99 be given retroactive effect.

In *Van Fossen*, the Ohio Supreme Court set forth a two-step inquiry for determining when a state statute should be given retroactive application. The first step is derived from Ohio Rev.Code § 1.48, which sets forth a fundamental rule of statutory construction that a statute is presumed to operate prospectively only absent an express indication to the contrary. *Id.* at paragraph one of the syllabus. If a legislative intention of retroactive application is expressed, then the second step requires an examination whether such retroactive application would violate the state constitution's proscription against retroactive legislation. It is this second step that involves the "remedial-substantive" distinction re-

lied upon by plaintiff. *Id.* at paragraph three of the syllabus. However, it is clear under *Van Fossen* that the second step of the inquiry is not reached if no legislative intention to make the statute retroactive in application is found. *Id.* at paragraph two of the syllabus.

■ The first issue presented is whether the Court should apply the *Van Fossen* analysis to determine whether section 4112.99 can be applied retroactively. Plaintiff argues that since section 4112.99 became effective September 28, 1987, and *Van Fossen* was not decided until April 13, 1988, the analysis set forth in *Van Fossen* is inapplicable. Rather, plaintiff argues that the retroactivity issue presented should be determined under the analysis in *Wilfong v. Batdorf,* 6 Ohio St.3d 100, 451 N.E.2d 1185 (1983), which focused solely on whether the statute in question is substantive or remedial. However, plaintiff's position is clearly inconsistent with several post-*Van Fossen* decisions of the Ohio Supreme Court, as that court has repeatedly applied the *Van Fossen* retroactivity analysis to statutes or statutory amendments effective prior to that decision. *See Ohio Citizens Bank v. Mills,* 45 Ohio St.3d 153, 543 N.E.2d 1206 (1989) (construing Ohio Rev.Code § 3107.15 effective January 1, 1977); *Warren County Bd. of Commrs. v. Lebanon,* 43 Ohio St.3d 188, 540 N.E.2d 242 (1989) (construing amendment to Ohio Rev.Code § 709.16 effective June 7, 1986); *State ex rel. Battin v. Bush,* 40 Ohio St.3d 236, 533 N.E.2d 301 (1988) (construing amendments to Ohio Rev.Code § 305.03 effective April 15, 1986). Moreover, the Sixth Circuit has also applied the *Van Fossen* analysis to Ohio legislation which predated that decision. *See Greyhound Food Management Inc. v. City of Dayton,* 852 F.2d 866, 869 (6th Cir.1988) (construing Ohio Rev.Code § 2744.05 effective November 20, 1985). As plaintiff cites no authority to the contrary, the Court is compelled to conclude that the two-step inquiry set forth in *Van Fossen* must be applied in determining whether Ohio Rev.Code § 4112.99 should be applied retroactively.

■ Under the *Van Fossen* analysis it is clear that section 4112.99 is not to be applied retroactively. The first step of the inquiry directs the Court to apply the statute prospectively only, pursuant to Ohio Rev.Code § 1.48, absent an express legislative intent to the contrary. Plaintiff presents no authority, nor does plaintiff even argue, that the Ohio General Assembly has expressly indicated an intention to have section 4112.99 applied retroactively, and thus the Court must conclude that under *Van Fossen* the statute must be given prospective effect only. The Court need not consider the parties' arguments as to the second step of the *Van Fossen* inquiry, *i.e.,* whether section 4112.99 is substantive or remedial legislation.

Plaintiff's second argument is that, notwithstanding *Van Fossen,* retroactive application of section 4112.99 is mandated by Ohio Rev.Code § 1.58(B), which provides:

> If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

Plaintiff's argument is premised on a comparison of current section 4112.99, on which plaintiff relies, and the section 4112.99 which was previously in effect. Former Ohio Rev.Code § 4112.99, effective until September 28, 1987, provided:

> Whoever violates Divisions (A) to (H) of section 4112.02, or sections 4112.07 or 4112.11 of the Revised Code is guilty of a misdemeanor of the third degree.

Plaintiff argues that Ohio Rev.Code § 4112.99 was originally a criminal statute, but that the 1987 amendment removed the criminal sanction and thereby "reduced" the penalty provided therein to potential liability in a civil action. Therefore, plaintiff concludes, this Court must apply the "reduced" penalty provision of current section 4112.99. The Court finds plaintiff's argument is without merit.

Ohio Rev.Code § 1.58(B) provides that the sentence for commission of an offense shall be imposed according to the law in effect at the time of sentencing if such

sentence is more lenient than that which would have been imposed under prior law. *See, e.g., State v. Collier*, 22 Ohio App.3d 25, 488 N.E.2d 887 (1984). The 1987 amendment to Ohio Rev.Code § 4112.99 did not "reduce" the "penalty, forfeiture, or punishment" under Chapter 4112, but, rather, eliminated the criminal sanction altogether. Thus if plaintiff were arguing, as he appears to be, that individuals may no longer be criminally prosecuted under former Ohio Rev.Code § 4112.99, that argument might itself have merit.[1] However, the fact that Ohio Rev.Code § 4112.99 now provides a civil cause of action does not mean that the "penalty" for an "offense" under Chapter 4112 has been "reduced." Replacing criminal liability with potential civil liability is simply not a reduction in penalty within the meaning of Ohio Rev. Code § 1.58(B), as the terms used in that statute are commonly understood.[2] Plaintiff having presented no case law, or compelling argument, to the contrary, the Court rejects plaintiff's attempt to rely on Ohio Rev.Code § 1.58(B).

For the foregoing reasons, the Court concludes that plaintiff may not maintain under Ohio Rev.Code § 4112.99 a cause of action which accrued prior to September 28, 1987, the effective date of that statute. *Accord Harris v. Ohio Dept. of Admin. Serv.*, No. 89AP–173, slip op. at 6 n. 1, 1989 WL 101109 (Franklin Cty.App. August 31, 1989). Plaintiff and defendant Rockwell agree that some of the conduct of which plaintiff complains occurred after September 28, 1987. Therefore, Rockwell is entitled to dismissal only to the extent plaintiff's claim under section 4112.99 is based on actions taken prior to that date. Plain-

tiff states that "Hiermer's motion must by its nature be likewise restricted." However, Hiermer has not conceded that plaintiff's amended complaint alleges conduct of Hiermer after September 28, 1987. In fact, Hiermer maintains that all the allegations against him are based on conduct occurring prior to that date. Having reviewed plaintiff's first amended complaint the Court is compelled to agree. As plaintiff's amended complaint fails to allege any actions of Hiermer after September 28, 1987, the complaint fails to state a claim for relief against Hiermer under Ohio Rev.Code § 4112.99.

**B. *42 U.S.C. § 1981***

■ Defendant Rockwell moves to dismiss in part plaintiff's claim under 42 U.S.C. § 1981 on grounds that it fails to state a claim for relief. Specifically, Rockwell argues that plaintiff's claim of retaliation[3] is not actionable under section 1981 as that statute was interpreted in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiff argues that *Patterson* suggests that a claim of retaliation such as that alleged by plaintiff can be brought under section 1981.[4]

Title 42, United States Code, Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penal-

---

**1.** Of course, whether Hiermer and/or Rockwell can be prosecuted under former section 4112.99 for their conduct with respect to Penn is a question not before this Court.

**2.** Indeed, an individual's "exposure," at least in terms of monetary penalties, could likely be much greater in a civil action for damages under current Ohio Rev.Code § 4112.99 than in a criminal prosecution under former Ohio Rev. Code § 4112.99. *See* Ohio Rev.Code § 2929.21(C)(3), which sets a five hundred dollar maximum on the fine for a misdemeanor of the third degree.

**3.** Plaintiff's second cause of action alleges that defendants violated his rights under section 1981 by "impairing his promotional opportunities and retaliating against [plaintiff] due to his race and opposition to racist practices." Rockwell does not at this time contest plaintiff's section 1981 claim based on impairment of promotional opportunities.

**4.** Neither party has suggested that *Patterson* should not be applied in this case.

ties, taxes, licenses, and exactions of every kind, and to no other.

In *Patterson,* the Supreme Court reaffirmed its holding in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), that section 1981 prohibits racial discrimination in the making and enforcement of private contracts. However, the court also limited to some extent the ability to use section 1981 as a means to redress racial discrimination in the workplace:

> [R]acial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations.

*Patterson,* 109 S.Ct. at 2369.

The plaintiff in *Patterson* alleged that she had been harassed, denied a promotion, and ultimately discharged, because of her race, in violation of section 1981. The trial court refused to submit to the jury the racial harassment claim, concluding that it was not actionable under section 1981. In upholding the trial court's ruling on this point, the Supreme Court focused on section 1981's protection of the right to "make and enforce contracts," and held that this language "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations." *Id.* 109 S.Ct. at 2372. Specifically, the court reasoned that the right to "make" contracts "extends only to the formation of the contract," and "not to problems that may arise later." *Id.* Regarding employment contracts in particular, the court stated that the right to make contracts does not extend "to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 2373.

With respect to section 1981's guarantee of the right to "enforce" contracts, the court found this to "embrace[ ] protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* The court also specifically noted that "[i]t ... covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Id.* (emphasis in original). However, the court indicated that the right is limited: "The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.*

The question presented by the parties is whether plaintiff's claim of retaliation, as opposed to his claim of nonpromotion, states a claim under section 1981 in light of *Patterson.* Plaintiff concedes that his claim of retaliation is not a claim of impairment of his right to *make* contracts. The question, then, is whether plaintiff's amended complaint states a claim of impairment of his right to *enforce* contracts, specifically his alleged contractual right to nondiscriminatory employment.

Before examining plaintiff's amended complaint the Court must first consider the threshold question whether any claim of retaliation can state a claim under section 1981 after *Patterson.* The right to assert a retaliation claim under section 1981 was recognized by the Sixth Circuit and other circuits prior to *Patterson.* *See Harris v. Richards Mfg. Co.,* 675 F.2d 811 (6th Cir. 1982); *Goff v. Continental Oil Co.,* 678 F.2d 593, 597–99 (5th Cir.1982). However, *Patterson* significantly limited the use of section 1981 to redress employers' conduct after and unrelated to the formation of the employment contract, and among the cases decided since *Patterson* there is some difference of opinion as to the extent to which an employee may now sue under section 1981 for discrimination suffered in the course of his employment. For example, courts are divided on the question whether a claim of discriminatory termination is actionable under section 1981. *Compare Padilla v. United Air Lines,* 716 F.Supp. 485, 490 (D.Colo.1989) ("discriminatory termination directly affects the right to make a contract contrary to § 1981") *with Bird-*

*whistle v. Kansas Power & Light Co.*, 723 F.Supp. 570, 575 (D.Kan.1989) ("discharge is directly related to contract enforcement and thus is still actionable under section 1981 in light of *Patterson*") *and Johnson v. United States Elevator Corp.*, 723 F.Supp. 1344, 1345 (E.D.Mo.1989) ("*Patterson* clearly establishes that plaintiff may not maintain an action for discriminatory discharge under 42 U.S.C. § 1981"). The Sixth Circuit has held in an unreported opinion that a claim of racially discriminatory job demotion is no longer cognizable under section 1981. *Becton v. Burlington Northern R.R. Co.*, 878 F.2d 1436 (6th Cir. 1989).

Courts are similarly split on the question presented in this case, *i.e.*, whether a claim of retaliation is cognizable under section 1981 after *Patterson*. In *Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366 (D.Colo. 1989), the court held that such a claim could be maintained:

> The *right to enforce contracts* extends to private efforts to obstruct nonjudicial methods of adjudicating disputes involving discrimination. Plaintiff alleges that he was retaliated against because he complained of discrimination and instigated an investigation regarding his charges. These allegations fall within the coverage afforded by the right to enforce contracts contained in § 1981.

*Id.* at 1368–69 (emphasis in original). *See also English v. General Development Corp.*, 717 F.Supp. 628, 632–33 (N.D.Ill. 1989). However, other courts have taken a contrary view. In *Alexander v. New York Medical College*, 721 F.Supp. 587 (S.D.N.Y. 1989), the court rejected the argument that a claim of retaliatory discharge may be redressed through section 1981. The court reasoned: "[N]either a demotion nor a retaliatory discharge interferes with an individual's right or ability to enforce a contract. Each may represent a breach of contract for which judicial redress is otherwise available." *Id.* at 588. The court also noted that "[a] retaliatory discharge in no way obstructs access to judicial redress." *Id.* at 588 n. 5. *See also Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 51–52 (D.D.C.1989); *Matthews*

*v. Northern Telecom, Inc.*, No. 88 Civ. 0583, 1989 WL 131343 (S.D.N.Y. November 1, 1989).

Unfortunately, the federal appellate court's that have been presented with the question have provided little guidance and have left the issue unresolved. *See Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir.1989). This is true of both of the pertinent appellate cases cited by the parties. In *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), of which plaintiff relies on Judge Cudahy's concurring opinion, the court expressly declined to reach the issue:

> [I]t can be argued that someone who retaliates against a person who has a claim of employment discrimination that might be actionable under section 1981 (and Malhotra may have such a claim, based on the denial of promotions that he sought) is interfering with that person's *ability* to make or enforce contracts on the same footing with white persons … and such interference could be thought itself a violation of section 1981…. But that is another question we need not answer today.

*Id.* at 1313 (emphasis in original, citation omitted). The case relied upon by Rockwell, *Overby v. Chevron USA, Inc.*, 884 F.2d 470 (9th Cir.1989), comes closest to resolving the issue:

> Retaliatory discharge, the allegation levied against Chevron, is specifically proscribed by section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). Though an argument could be concocted that [the employer's] conduct impedes, in some broad sense, Overby's access to the EEOC, the Court in *Patterson* counseled against stretching the meaning of section 1981 to protect conduct already covered by Title VII.

*Id.* at 473. However, the court had noted earlier that the plaintiff did not allege that his employer "obstructed his access to courts or any other dispute resolution process, such as that provided by the EEOC." *Id.*

Retaliatory discharge claims were before the Sixth Circuit in three recent cases,

though that court in its unpublished opinions failed to resolve the question at issue. In *Jones v. City of Cleveland*, 898 F.2d 154 (6th Cir.1990), the plaintiff claimed that he had been discharged in retaliation for having once filed charges of race discrimination against the city. However, the plaintiff conceded on appeal that pursuant to *Patterson* section 1981 "is not available to challenge racial discrimination in the workplace in claims actionable under Title VII." *Id.* at 3 n. 3 [898 F.2d 154 (table)]. In *Peterson v. King Tree Center*, 896 F.2d 1369 (6th Cir.1990), the court expressly declined to reach the issue. Finally, in *Singleton v. Kellogg Co.*, 890 F.2d 417 (6th Cir.1989), the plaintiff's retaliatory discharge claim was based on Title VII and state law only. The only section 1981 claim asserted was for "racially discriminatory discharge," which the court found to be no longer cognizable in light of *Patterson.*

Having found no conclusive and controlling authority the Court returns to the language and reasoning of *Patterson*. In the Court's view, *Patterson* compels the conclusion that a claim of retaliation, in the form of discharge or in some other form, is no longer actionable under section 1981. The Court reaches this conclusion for several reasons.

First, the critical inquiry under section 1981's protection of the right to "enforce" contracts must center on whether the conduct of the employer "impairs an employee's ability to enforce through legal process his or her established contract rights." *Patterson*, 109 S.Ct. at 2373. Where an employer discharges, or takes some other action against, an employee in retaliation for the employee's filing of a claim with the EEOC, or the employee's invocation of some other legal process, the employer does not impair the employee's access to that remedy, or to any judicial or other administrative remedies. It could be argued, as plaintiff argues, that such retaliatory conduct by an employer would discourage employees from bringing valid complaints before the EEOC or the courts. However, such "discouragement," although it may impair an employee's *willingness* to access the legal process, does

nothing to impair the employee's *ability* to do so. An employee who fears retaliation for filing a complaint with the EEOC is nonetheless freely able to do so, and an employee who is harassed and/or discharged in retaliation for filing such a claim is also freely able to seek administrative and judicial relief. *See Alexander*, 721 F.Supp. at 588 n. 5. Retaliatory conduct is clearly unlike the conduct found actionable in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), where the court held that entities such as labor unions responsible themselves for processing grievances of employees could not refuse to process all race discrimination grievances, thereby completely depriving affected employees of access to that dispute resolution mechanism.

Second, the court in *Patterson* was obviously concerned with the substantial overlap between Title VII and section 1981. Although the court noted that "some overlap will remain between the two statutes," the court expressed its reluctance "to read [section 1981] broadly where the result is to circumvent the detailed remedial scheme constructed in [Title VII]." *Patterson*, 109 S.Ct. at 2375. The fact that racial harassment of employees is actionable through Title VII "should lessen the temptation ... to twist the interpretation of another statute (§ 1981) to cover the same conduct." *Id.* Similarly, as noted in *Overby*, 884 F.2d at 473, retaliatory discrimination, by discharge or otherwise, is specifically proscribed by Title VII. *See* 42 U.S.C. § 2000e–3(a). Accordingly, courts should be reluctant to read section 1981 to also cover such conduct.

Finally, the express holding in *Patterson* was that "racial harassment relating to the conditions of employment is not actionable under § 1981." *Patterson*, 109 S.Ct. at 2369. The Court has little doubt that in most if not all cases of racial harassment in the workplace the victim could also allege that the harassment caused him to fear retaliation if he complained, or that the harassment was in retaliation for a complaint he previously made. To hold that a racial harassment claim could be actionable

under section 1981 if pled as a "retaliation" claim would clearly circumvent the holding and reasoning of *Patterson*. Racial harassment in the workplace cannot be rendered actionable under section 1981 simply by amending the form in which it is pled.

For the foregoing reasons, the Court concludes that a claim of retaliation is not actionable under section 1981. However, the Court also notes that even if such a claim could be made under section 1981 after *Patterson*, plaintiff's amended complaint does not appear to state such a claim. Under *Patterson*, the relevant inquiry is whether Penn has alleged conduct by Rockwell which impaired Penn's "ability to enforce through legal process his ... established contract rights." In other words, does Penn allege conduct of Rockwell constituting an effort "to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes"? In response to this inquiry the Court notes that plaintiff's second cause of action alleges retaliation "due to his race and opposition to racist practices." There is no allegation that the retaliation was due to his having accessed the courts or some nonjudicial method of adjudicating disputes. Searching elsewhere in the complaint the Court finds only two potentially relevant allegations, in paragraphs 24 and 34.

Paragraph 24 states: "Apprehensive about retaliation and wary of any employer that did not discipline a supervisor known to engage in the racist behavior Ronald W. Hiermer did, John D. Penn did not file a formal complaint in September, 1985." However, according to paragraph 25, Penn did file a formal complaint with the Labor Relations Department on December 23, 1985. Thus, even reading the complaint in the light most favorable to plaintiff, and accepting the allegations therein as true, Rockwell did not impair Penn's ability to use this "nonjudicial method of adjudicating disputes," *i.e.*, the Labor Relations Department. Indeed, Penn was able to use that process to achieve the desired result: Penn's complaint was investigated and Hiermer was relieved of his supervisory responsibilities.

Paragraph 34 states "retaliation in the form of harassment from co-workers persisted until John D. Penn was laid off from Rockwell even though managing agents at Rockwell were informed about such retaliation." However, there is no indication as to what the alleged harassment was in retaliation for. The most liberal construction that can be given the complaint, which is the construction given it by plaintiff in his memorandum in opposition to defendants' motions, is that he alleges he was harassed in retaliation for complaining to his supervisors about racial harassment. However, noticeably absent from the complaint is any allegation that the reason he was retaliated against by his co-workers was his efforts to enforce his contract rights *through the legal process*, and plaintiff's memorandum does not suggest that such retaliation is alleged in the complaint. Accordingly, the Court cannot conclude that paragraph 34 states a claim which would survive *Patterson*.

Therefore, under *Patterson* plaintiff has failed to state a claim for relief under section 1981 to the extent he bases that claim on retaliation.

CONCLUSION

For the foregoing reasons and consistent with this opinion: defendant Hiermer's motion for partial summary judgment is GRANTED; defendant Rockwell's motion to dismiss with respect to plaintiff's claim under Ohio Rev.Code § 4112.99 is GRANTED, and with respect to plaintiff's claim under 42 U.S.C. § 1981 is also GRANTED.

IT IS SO ORDERED.