**Jacqueline STRADFORD, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORP., Defendant.**

**No. C-2-86-428.**

United States District Court, S.D. Ohio, E.D.

Jan. 17, 1991.

Louis Abraham Jacobs, Columbus, Ohio, for plaintiff.

John Wolcott Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is presently before the Court on defendant Rockwell International Corporation's motion for summary judgment on plaintiff's claim pursuant to 42 U.S.C. § 1981. Defendant argues that the allegations of plaintiff's amended complaint do not state a cause of action under section 1981 in light of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

## STATEMENT OF FACTS

Plaintiff Jacqueline Stradford, an African-American female, began employment with defendant Rockwell on or about September 21, 1981 as a Transfer Section Representative at Salary Grade 3. Two white males, Bob Higgins and Dan Ault, were hired at about the same time as plaintiff, and although they initially received the same salary as plaintiff, in September 1982 plaintiff was receiving a lower rate of pay than these two individuals. In February 1983 plaintiff discussed her salary with

William G. Louwers, one of plaintiff's supervisors, and during that month plaintiff received a merit increase of $142.00 per month and a change to Salary Grade 5. Higgins and Ault allegedly received substantially higher merit increases. Plaintiff complained about the limitation of her merit increase through what she describes as "an internal appeal process," and a positive adjustment in her increase was made and applied retroactively.

In February 1984 plaintiff received a merit increase of approximately five percent. Plaintiff complained about this increase through the "internal appeal process," and plaintiff's merit increase was ultimately raised to seven percent effective January 1984. Plaintiff received a four percent merit increase in April 1985. Her overall job performance was rated at that time as "satisfactory," although she had previously received evaluations of "satisfactory plus" and "excellent." Plaintiff alleges that prior to her April 1985 evaluation she had never received any notice that her job performance was slipping. Plaintiff complained about the April 1985 increase but she did not receive additional compensation.

Plaintiff further alleges that in early 1983 Louwers told supervisor Don Elder that three employees, including plaintiff, would have to be fired, in part because they were not "team players." However, Elder did not discharge plaintiff. Plaintiff complained to Louwers about her employment conditions, including lack of clerical support, overload of work, demeaning public comments about her job performance, and preferential treatment given to white male employees. In December 1984 plaintiff declined the opportunity to be considered for the position of Employment Recruiter. Plaintiff alleges that she was approached about that position only because "Louwers wanted her out of his department." Also, during the three-year period prior to the commencement of this action there were at least three openings in defendant's Labor Relations Department for Labor Relations Representatives. That position in general offers promotional opportunities beyond Salary Grade 5. Plaintiff did not apply for any of the Labor Representative position openings, allegedly because it was indicated to her that several years of experience in labor relations was required. Plaintiff claims that she was qualified to be a Labor Representative. White males were hired to fill the three Labor Representative openings.

In September 1985 plaintiff sought a transfer to the position of Personnel Associate in the Systems and Records Department, a clerical position classified as salaried non-exempt under the Fair Labor Standards Act. Plaintiff claims that the Personnel Associate position had promotional opportunities, although defendant states that the position was lower paying and had lesser responsibilities than plaintiff's position of Transfer Section Representative. Plaintiff was not granted the transfer, and she was told that the department did not know whether it would fill the position. The employee holding the position of Personnel Associate was asked to remain in that position.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 8, 1985. Thereafter, Louwers allegedly retaliated against plaintiff in various ways, and plaintiff filed an amendment to her EEOC charge on December 9, 1985, alleging retaliation. Plaintiff allegedly did not receive a February 1986 merit increase, and she further alleges that Al Sikora, a white male, did timely receive his annual merit increase. Finally, plaintiff claims to have suffered and allegedly continues to suffer emotional distress, mental anguish, and physical harm, including weight gain, due to the discrimination, retaliation, and unfair treatment committed by Louwers.[1]

Plaintiff commenced this action on April 17, 1986. The original complaint contained four causes of action: race and sex discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII; breach of contract; and intentional and negligent infliction of emotional distress. On July 25,

---

1. Plaintiff was laid off in October 1987; however, this layoff is not at issue in this action.

1988 the Court granted defendant's motion for summary judgment on the breach of contract and emotional distress claims. A motion to amend the complaint was filed on December 6, 1989, in which plaintiff sought to make three amendments: (1) deletion of the state law claims on which the Court had granted defendant's motion for summary judgment; (2) addition of a cause of action under Ohio Rev.Code § 4112.99, as amended effective September 28, 1987;[2] and (3) revision of her 42 U.S.C. § 1981 claim in light of *Patterson.* The motion to amend was granted in part and denied in part. Specifically, plaintiff was permitted to delete the previously dismissed state law claims and to revise the allegations pertinent to the section 1981 claim in light of *Patterson.* However, plaintiff's motion to add a claim under Ohio Rev.Code § 4112.99 was denied, as the Court concluded that to give retroactive effect to that statute would be contrary to Ohio statutory and constitutional law as interpreted in *Van Fossen v. Babcock & Wilcox Co.,* 36 Ohio St.3d 100, 522 N.E.2d 489 (1988).

Plaintiff's amended complaint was filed on May 8, 1990, and it contains two causes of action: a claim under Title VII of the Civil Rights Act of 1964, and a claim under 42 U.S.C. § 1981. Specifically, in the section 1981 claim, plaintiff alleges that defendant Rockwell violated that statute "[b]y impairing her promotional opportunities and denying her a transfer to a position with potential promotional opportunities and retaliating against [plaintiff] due to her race and opposition to racist practices and participation in administrative processes to rectify such discrimination." Defendant Rockwell moves for summary judgment on the section 1981 claim, arguing that the conduct alleged in the complaint does not state a claim cognizable under section 1981 after *Patterson.* Plaintiff argues in response that in denying her positions which offered promotional opportunities defendant denied her the equal right to make contracts. Plaintiff further alleges that the retaliatory conduct of her supervisor at Rockwell impaired her ability to enforce her contract rights. Accordingly, plaintiff's position is that the complaint does state a cause of action under section 1981 even after *Patterson.*[3]

## DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a

---

**2.** Ohio Rev.Code Chapter 4112 prohibits discrimination in employment. Ohio Rev.Code § 4112.99, effective September 28, 1987, provides:

Whoever violates [Ohio Rev.Code Chapter 4112] is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

**3.** Neither party has ever argued that *Patterson*'s interpretation of section 1981 should not be applied here because this action was commenced approximately three years before *Patterson.* In many cases, retroactive application of *Patterson* has been a disputed issue. However, following the analysis of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), courts have generally held that *Patterson* should be applied in cases pending as of the date of that decision. *See, e.g., Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 806–07 (5th Cir.1990); *Malekian v. Pottery Club of Aurora, Inc.,* 724 F.Supp. 1279, 1281 (D.Colo.1989); *but see Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F.Supp. 649, 651 n. 2 (E.D.Wis.1989).

reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

> "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11 [103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. at 1608–09.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

## B. DENIAL OF PROMOTIONAL OPPORTUNITIES

█ The parties agree that *Patterson* expressly left open the possibility of establishing a section 1981 claim on the basis of a discriminatory refusal to promote. The parties further agree on the test applicable to such a claim:

[T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Patterson*, 109 S.Ct. at 2377. What the parties disagree upon is whether plaintiff's complaint alleges a failure to promote actionable under section 1981, *i.e.*, the denial of "an opportunity for a new and distinct relation." *Id.*

Defendant cites to numerous post-*Patterson* cases which generally have held that a mere increase in salary, or a mere change in job duties or responsibilities, would not constitute a "new and distinct relation." For example, in *Long v. A T & T Information Sys., Inc.*, 733 F.Supp. 188 (S.D.N.Y.1990), the court noted that "since higher pay is a typical result of promotion, this alone cannot constitute a new and distinct relationship." *Id.* at 196. It is defendant's position that to be actionable under section 1981 the promotion must involve "significant changes in the employment relationship, such as movement from a position as an employee to that of an officer, or from a non-exempt, non-supervisory position to an exempt managerial position." *See, e.g.*, *Williams v. Chase Manhattan Bank*, 728 F.Supp. 1004, 1008–09 (S.D.N.Y. 1990). Cases indicate that trial courts should

analyze failure-to-promote claims under *Patterson* by carefully examining what changes, if any, will result from the promotion and determining if the combined changes are significant enough to give rise to a new and distinct relationship. Their inquiry is clearly fact specific. The developing body of case law has identified several significant changes: changes in pay, in duties and responsibilities, in status from hourly to salaried employee, in required qualifications, in responsibility level, in daily duties, in potential liability, and in pension and other benefits. There are potentially many factors that could arise to influence the determination, for example, change in location, in grade, in department or office, and in use of equipment.

The cases that have addressed the issue instruct that the trial court must consider evidence of all change, those identified above and others, which a promotion will work. It must then exercise reasoned judgment as to whether that change will work a new and distinct relation between the parties. This judgment must consider not only the number of resulting changes, but the magnitude of individual changes, and of the changes as a whole. A significant single change, such as the change from hourly to salaried employee, would be enough to satisfy *Patterson*. In instances of smaller changes, such as changes in equipment use or employment grade without accompanying increases in responsibility, a combination of two or more changes would be necessary to work a new relation between the parties.

*Hudgens v. Harper–Grace Hosp.*, 728 F.Supp. 1321, 1325–26 (E.D.Mich.1990). *See also Brereton v. Communications Satellite Corp.*, 735 F.Supp. 1085, 1089 (D.D.C.1990) (noting that when the question is not clear one way or the other "courts must make increasingly fine distinctions based upon highly fact-specific

comparisons of job descriptions and responsibilities"). As an example of a promotion which offered "a new and distinct relation" the Court in *Patterson* cited *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), which involved the refusal of a law firm to accept an associate into partnership. *Patterson,* 109 S.Ct. at 2377. Some courts have found *Patterson*'s citation to *Hishon* to be significant and have compared promotion claims to the one at issue in *Hishon. See, e.g., Long,* 733 F.Supp. at 196; *Williams,* 728 F.Supp. at 1009.

The two positions which plaintiff was allegedly denied are Labor Relations Representative and Personnel Associate. Plaintiff argues that these two positions were significantly different from the position she held, Transfer Section Representative, in that both positions offered promotional opportunities beyond those available to plaintiff as a Transfer Section Representative, and the Personnel Associate position was classified as salaried non-exempt under the Fair Labor Standards Act, whereas Transfer Section Representative was an exempt position. *See* 29 U.S.C. § 213. Plaintiff concedes that transfer to either of these positions would not have constituted a promotion. However, she argues that they would create a "new and distinct relation" because they offered "promotional opportunities," and because one was classified non-exempt.

In its reply memorandum defendant does not contest plaintiff's argument that the Labor Representative and Personnel Associate positions offered promotional opportunities potentially greater than those available to a Transfer Section Representative. Nor does defendant dispute that the Personnel Associate position is non-exempt, whereas Transfer Section Representative is an exempt position. Accordingly, the position held by plaintiff and the new positions denied her were in these respects different. However, plaintiff concedes that the positions are in many other respects similar. Specifically, the parties apparently agree that had plaintiff been transferred to either of the positions in question she would have remained a salaried at-will employee, covered by the same compensation packages and personnel rules, and she would have performed "similar, albeit distinct, job duties within the Human Resources department." The issue is whether the distinctions are sufficient to support a conclusion that the other positions offered "a new and distinct relation."

Having reviewed *Patterson* and the numerous cases cited by defendant which have applied *Patterson* in this context, the Court must conclude that neither of the positions denied plaintiff offered a new and distinct relation such that denial of the position would be actionable by plaintiff under section 1981. The Court need not explore the "gray area" between promotions which do and do not offer "a new and distinct relation," *Brereton,* 735 F.Supp. at 1089, as it is clear that no new and distinct relation was denied in this case. Under *Patterson* the circumstances giving rise to a promotion claim actionable under section 1981 are limited. To this Court, the denial of a position which did not even constitute a promotion would even more rarely, if ever, be actionable under section 1981. *See Bell v. Krogers, Inc.,* No. 89–3206, slip op. at 3 n. 2 (6th Cir. Mar. 8, 1990) [897 F.2d 529 (Table)] (denial of transfer from cashier position to office worker position not cognizable under section 1981). Plaintiff here concedes that she was not denied a promotion. It would clearly be contrary to *Patterson* to hold that a transfer to a substantially similar position would create a new and distinct relation simply because the new position offered greater potential for a promotion to another position at some unknown point in the future. Although the Personnel Associate position also differed in terms of its nonexempt status, the Court must conclude that the circumstances presented here are insufficient as a matter of law to state a section 1981 promotion claim under *Patterson.*

## C. RETALIATION

■ With regard to plaintiff's claim of retaliation, the parties correctly recognize that this Court has recently taken a posi-

tion on the question whether a claim of retaliation may be brought under section 1981 after *Patterson.* In *Penn v. Rockwell International Corp.,* 756 F.Supp. 1040 (S.D.Ohio 1990), this Court found that *"Patterson* compels the conclusion that a claim of retaliation, in the form of discharge or in some other form, is no longer actionable under section 1981." The parties in the present case are obviously familiar with the Court's memorandum and order in *Penn,* as defendant Rockwell is also a defendant in that case and plaintiff Stradford's counsel is also counsel for the plaintiff in *Penn.* However, in considering defendant Rockwell's present motion for summary judgment, the Court finds it appropriate to review *Patterson* and the reasons for this Court's conclusion that a retaliation claim is not cognizable under section 1981 after *Patterson.*

Title 42, United States Code, Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In *Patterson,* the Supreme Court reaffirmed its holding in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), that section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Patterson,* 109 S.Ct. at 2370. However, the Court also limited to some extent the ability to use section 1981 as a means to redress racial discrimination in the workplace:

[R]acial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which

does not interfere with the right to enforce established contract obligations. *Id.* at 2369.

The plaintiff in *Patterson* alleged that she had been harassed, denied a promotion, and ultimately discharged, because of her race, in violation of section 1981. The trial court refused to submit to the jury the racial harassment claim, concluding that it was not actionable under section 1981. In upholding the trial court's ruling on this point, the Supreme Court focused on section 1981's protection of the right to "make and enforce contracts," and held that this language "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations." *Id.* 109 S.Ct. at 2372. Specifically, the Court reasoned that the right to "make" contracts "extends only to the formation of a contract," and "not to problems that may arise later." *Id.* Regarding employment contracts in particular, the Court stated that the right to make contracts does not extend "to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 2373.

With respect to section 1981's guarantee of the right to "enforce" contracts, the Court found this to "embrace[ ] protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* The Court also specifically noted that "[i]t ... covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Id.* (emphasis in original). However, the Court indicated that the right is limited: "The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.*

The question presented is whether a claim of retaliation can state a claim under section 1981 after *Patterson.* The right to assert a retaliation claim under section

1981 was recognized by the Sixth Circuit and other circuits prior to *Patterson. See Harris v. Richards Mfg. Co.*, 675 F.2d 811 (6th Cir.1982); *Goff v. Continental Oil Co.*, 678 F.2d 593, 597–99 (5th Cir.1982). However, *Patterson* significantly limited the use of section 1981 to redress employers' conduct after and unrelated to the formation of the employment contract, and among the cases decided since *Patterson* there is some difference of opinion as to the extent to which an employee may now sue under section 1981 for discrimination suffered in the course of his employment. For example, district courts are somewhat divided on the question whether a claim of discriminatory termination is actionable under section 1981, although the overwhelming majority of courts have held that section 1981 does not apply to such conduct. *Compare Padilla v. United Air Lines*, 716 F.Supp. 485, 490 (D.Colo.1989) ("discriminatory termination directly affects the right to make a contract contrary to § 1981") *and Birdwhistle v. Kansas Power & Light Co.*, 723 F.Supp. 570, 575 (D.Kan.1989) ("discharge is directly related to contract enforcement and thus is still actionable under section 1981 in light of *Patterson* ") *with Johnson v. United States Elevator Corp.*, 723 F.Supp. 1344, 1345 (E.D.Mo. 1989) (*"Patterson* clearly establishes that plaintiff may not maintain an action for discriminatory discharge under 42 U.S.C. § 1981").[4] The federal appellate courts are also somewhat divided on the issue. *Compare Lavender v. V & B Transmissions &*

*Auto Repair*, 897 F.2d 805, 807–08 (5th Cir.1990) (expressly disagreeing with *Padilla*, 716 F.Supp. 485),[5] *McKnight v. General Motors Corp.*, 908 F.2d 104, 108–09 (7th Cir.1990), *and Courtney v. Canyon Television & Appliance Rental*, 899 F.2d 845, 849 (9th Cir.1990) (citing *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 472–73 (9th Cir.1989) *with Hicks v. Brown Group, Inc.*, 902 F.2d 630, 635–48 (8th Cir.1990) (finding that *Patterson* does not foreclose a section 1981 claim for discriminatory termination).[6] The Sixth Circuit has very recently joined those courts holding that a claim of racially discriminatory termination is no longer cognizable under section 1981. *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255 (6th Cir.1990). *See also Becton v. Burlington Northern R.R. Co.*, 878 F.2d 1436 (6th Cir.1989).

Courts are also to some extent split on the question presented in *Penn* and in this case, *i.e.*, whether a claim of retaliation is cognizable under section 1981 after *Patterson.* In *Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366 (D.Colo.1989), the court held that such a claim could be maintained:

> The *right to enforce contracts* extends to private efforts to obstruct nonjudicial methods of adjudicating disputes involving discrimination. Plaintiff alleges that he was retaliated against because he complained of discrimination and instigated an investigation regarding his charges. These allegations fall within

**4.** Numerous other lower courts have also held that a discriminatory or retaliatory termination would no longer be actionable under section 1981. *See, e.g., Maldonado v. Metra*, 743 F.Supp. 563, 565 (N.D.Ill.1990); *Otubu v. Wakefern Food Corp.*, 741 F.Supp. 57, 58 (S.D.N.Y. 1990); *Weldon v. Kraft, Inc.*, 739 F.Supp. 972, 974 (E.D.Pa.1990); *Newton v. A.B. Dick Co.*, 738 F.Supp. 952, 954 (D.Md.1990); *Brereton*, 735 F.Supp. at 1088; *Jackson v. GTE Directories Serv. Corp.*, 734 F.Supp. 258, 264–66 (N.D.Tex. 1990); *Williams v. BLM Co.*, 731 F.Supp. 231, 235 (N.D.Miss.1990); *Hayes v. Community General Osteopathic Hosp.*, 730 F.Supp. 1333, 1335 (M.D.Pa.1990); *Joseph v. Zachary Manor Nursing Home*, 729 F.Supp. 41, 42 (M.D.La.1990); *Coleman v. Domino's Pizza, Inc.*, 728 F.Supp. 1528, 1531 (S.D.Ala.1990); *Gregory v. Harris–Teeter Supermarkets, Inc.*, 728 F.Supp. 1259, 1262 (W.D.N.C.1990); *Thompson v. Johnson &*

*Johnson Mgt. Information Center*, 725 F.Supp. 826, 827 (D.N.J.1989); *Malekian*, 724 F.Supp. at 1280; *Morgan v. Kansas City Area Transp. Auth.*, 720 F.Supp. 758, 759 (W.D.Mo.1989); *Greggs v. Hillman Distributing Co.*, 719 F.Supp. 552, 554 (S.D.Tex.1989); *but see Kriegel v. Home Ins. Co.*, 739 F.Supp. 1538, 1539–40 (N.D.Ga. 1990).

**5.** *See also Carter v. South Central Bell*, 912 F.2d 832, 840 (5th Cir.1990); *Carroll v. General Accident Ins. Co.*, 891 F.2d 1174, 1175–77 (5th Cir. 1990).

**6.** *See also Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 722 (2d Cir.1990) (finding that termination of a contract may still be actionable under section 1981, but only where intent to discriminatorily terminate exists at the time of contract formation).

the coverage afforded by the right to enforce contracts contained in § 1981.

*Id.* at 1368–69 (emphasis in original). *See also English v. General Development Corp.*, 717 F.Supp. 628, 632–33 (N.D.Ill. 1989). However, other courts have taken a contrary view. In *Alexander v. New York Medical College*, 721 F.Supp. 587 (S.D.N.Y. 1989), the court rejected the argument that a claim of retaliatory discharge may be redressed through section 1981. The court stated that discharge does not implicate the process of *making* an employment contract, and further reasoned: "[N]either a demotion nor a retaliatory discharge interferes with an individual's right or ability to enforce a contract. Each may represent a breach of contract for which judicial redress is otherwise available." *Id.* at 588. The court also noted that "[a] retaliatory discharge in no way obstructs access to judicial redress." *Id.* at 588 n. 5. *See also Maldonado*, 743 F.Supp. at 565 ("cause of action for retaliatory discharge under section 1981 is clearly not actionable in light of *Patterson*"); *Long*, 733 F.Supp. at 195–96; *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 51–52 (D.D.C.1989). For the following reasons, the Court agrees with those cases holding that a retaliation claim may no longer be brought under section 1981.

First, the critical inquiry under section 1981's protection of the right to "enforce" contracts must center on whether the conduct of the employer "impairs an employee's ability to enforce through legal process his or her established contract rights." *Patterson*, 109 S.Ct. at 2373. Where an employer discharges, or takes some other action against, an employee in retaliation for the employee's filing of a claim with the EEOC, or the employee's invocation of some other legal process, the employer does not impair the employee's access to that remedy, or to any judicial or other administrative remedies. It could be argued, as plaintiff argues, that such retaliatory conduct by an employer would discourage employees from bringing valid complaints before the EEOC or the courts. However, such "discouragement," although it may impair an employee's *will-*

*ingness* to access the legal process, does nothing to impair the employee's *ability* to do so. An employee who fears retaliation for filing a complaint with the EEOC is nonetheless freely able to do so, and an employee who is harassed and/or discharged in retaliation for filing such a claim is also freely able to seek administrative and judicial relief. *See Alexander*, 721 F.Supp. at 588 n. 5. Retaliatory conduct is clearly unlike the conduct found actionable in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), where the court held that entities such as labor unions responsible themselves for processing grievances of employees could not refuse to process all race discrimination grievances, thereby completely depriving affected employees of access to that dispute resolution mechanism. *Compare Franceschi v. Edo Corp.*, 736 F.Supp. 438, 443–44 (E.D.N.Y.1990) (employer may be said to have obstructed employee's access to the courts by only giving him four hours to file his claim with the EEOC office and firing him for lateness the following work day).

Second, the Court in *Patterson* was obviously concerned with the substantial overlap between Title VII and section 1981. Although the Court noted that "some overlap will remain between the two statutes," the Court expressed its reluctance "to read [section 1981] broadly where the result is to circumvent the detailed remedial scheme constructed in [Title VII]." *Patterson*, 109 S.Ct. at 2375. The fact that racial harassment of employees is actionable through Title VII "should lessen the temptation … to twist the interpretation of another statute (§ 1981) to cover the same conduct." *Id.* Similarly, as noted in *Overby*, 884 F.2d at 473, retaliatory discrimination, by discharge or otherwise, is specifically proscribed by Title VII, *see* 42 U.S.C. § 2000e–3(a). *See also Carter*, 912 F.2d at 840. Accordingly, courts should be reluctant to read section 1981 to also cover such conduct.

Finally, the express holding in *Patterson* was that "racial harassment relating to the conditions of employment is not actionable

under § 1981." *Patterson*, 109 S.Ct. at 2369. The Court has little doubt that in most if not all cases of racial harassment in the workplace the victim could also allege that the harassment caused him to fear retaliation if he complained, or that the harassment was in retaliation for a complaint he previously made. To hold that a racial harassment claim could be actionable under section 1981 if pled as a "retaliation" claim would clearly circumvent the holding and reasoning of *Patterson*. Racial harassment in the workplace cannot be rendered actionable under section 1981 simply by amending the form in which it is pled. For these reasons, this Court concluded in *Penn*, and the Court reaffirms here, that section 1981 does not provide a remedy to an employee who alleges that his or her employer discharged or otherwise adversely affected his or her conditions of employment in retaliation for the employee's complaints about discrimination in the workplace.

Plaintiff argues that this Court's rationale in *Penn* "is so far removed from the reality of the workplace that it lacks persuasion." However, this Court is clearly not the only one to have reached the conclusion that, in light of *Patterson*, retaliatory conduct of an employer does not deny the right to make and enforce contracts within the meaning of section 1981. Defendant cites to a number of reported and unreported cases which have reached this conclusion. *See, e.g., Alexander*, 721 F.Supp. at 588; *Williams*, 716 F.Supp. at 51–52; *see also Maldonado*, 743 F.Supp. at 565–66; *Watson v. Sears, Roebuck Co.*, 742 F.Supp. 353, 355 (M.D.La.1990); *Senigaur v. Beaumont Independent School Dist.*, 739 F.Supp. 1098, 1099 (E.D.Tex. 1990); *Kozam v. Emerson Elec. Co.*, 739 F.Supp. 307, 310 (N.D.Miss.1990); *Walton v. Cowin Equipment Co.*, 733 F.Supp. 327, 328 (N.D.Ala.1990); *Long*, 733 F.Supp. at 195–96; *Miller v. Swissre Holding, Inc.*, 731 F.Supp. 129, 132 (S.D.N.Y.1990). Plaintiff states that convincing this Court that its ruling in *Penn* was erroneous "is a Sisyphean task," and perhaps it is for this reason that plaintiff fails to cite even a single case to support a contrary reading of *Patterson*.

As noted earlier, the Court is aware through its own research that there is some split of authority on the question presented. In *Lytle v. Household Mfg., Inc.*, —— U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the Supreme Court expressly declined to consider the issue. *See id.* at 1336 n. 3. The district court cases cited earlier reveal the difference of opinion on the matter. Similarly, the appellate courts that have addressed the issue also have reached different conclusions. *Compare McKnight v. General Motors Corp.*, 908 F.2d 104, 111–12 (7th Cir.1990) (employer's retaliation against employee for bringing suit to enforce contract of employment might be guilty of violating section 1981)[7] *and Hicks v. Brown Group, Inc.*, 902 F.2d 630, 638–39 n. 20 (8th Cir.1990) *with Carter v. South Central Bell*, 912 F.2d 832, 840 (5th Cir.1990) ("section 1981 no longer extends to retaliatory termination") *and Overby v. Chevron USA, Inc.*, 884 F.2d 470, 472–73 (9th Cir.1989). Although there are no reported decisions from the Sixth Circuit on the issue, the Court is aware that a panel of the Sixth Circuit in an unreported case has read *Patterson* "to suggest that

---

7. The court in *McKnight* went on to hold that the plaintiff in that case had not stated a retaliation claim actionable under section 1981 because the plaintiff alleged that he was retaliated against not for enforcing his contract rights but for enforcing his rights under antidiscrimination laws. The court rejected the idea that public policy reads into every employment contract a contractual duty not to discriminate on the basis of race. Rather, the court held that "'an employer's retaliatory conduct falls under section 1981 only when the employee aims to prevent or discourage an employee [because of race] from using legal process to enforce a spe-

cific contract right.'" *Id.* at 112 (quoting *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.1990)). Just as in *McKnight* and in *Sherman*, plaintiff's claim here is not that she was retaliated against for her efforts to enforce a specific contract right. She instead claims that defendant violated section 1981 by retaliating against her "due to her race and opposition to racist practices and participation in administrative processes to rectify such discrimination." In the Court's view, neither *Sherman* nor *McKnight* would recognize such a claim under section 1981.

claims of retaliatory discharge may not be brought under section 1981." *Christian v. Beacon Journal Publishing Co.*, 908 F.2d 972 (6th Cir.1990).

This Court finds the reasoning of *Carter* to be in agreement with the holding in *Patterson*. In *Carter*, the court stated three arguments in support of its holding that section 1981 no longer extends to retaliatory termination. First, the court noted, as this Court did in *Penn*, that Title VII will protect an employee from retaliation, *see* 42 U.S.C. § 2000e–3(a). *Id.* at 840. *See also Miller*, 731 F.Supp. at 132 ("To hold that retaliatory dismissal alone is a sufficient obstacle to enforcement of a contract would be to disregard the Supreme Court's strong admonishment that courts not stretch the meaning of section 1981 to reach conduct already proscribed under Title VII"). Second, the court noted the distinction, recognized in *McKnight*, 908 F.2d at 112, and *Sherman*, 891 F.2d at 1535, between retaliation for enforcing a contract right and retaliation for enforcing a right given under the civil rights laws. *Carter*, 912 F.2d at 840. *See supra* note 7. Finally, the court held that treating retaliatory discharges as beyond the scope of section 1981 is consistent with the court's prior holding that discriminatory discharge is no longer actionable under section 1981. *Carter*, 912 F.2d at 840–41 (referring to, *inter alia*, *Lavender*, 897 F.2d at 807–08).

Plaintiff also refers to the Court's ruling as based upon "a tortured, restrictive reading of 42 U.S.C. Section 1981." Citation is made to a passage from *Patterson* in which the Supreme Court noted its agreement that "there is some necessary overlap between Title VII and § 1981." *Patterson*, 109 S.Ct. at 2375. However, this Court did not hold in *Penn*, nor does the Court hold in this case, that a claim which may be brought under Title VII can only be brought under Title VII and as a matter of law may not be brought under section 1981. As the Supreme Court recognized in *Patterson*, in view of the comprehensive framework of Title VII there will necessarily be some overlap in protections afforded by Title VII and Section 1981. However, although the *Patterson* Court did not, and

indeed could not, eliminate all such overlap, the Court expressly cautioned against reading section 1981 broadly to cover the same conduct governed by Title VII, inasmuch as this would tend to "circumvent the detailed remedial scheme constructed in [Title VII]." *Id.* at 2375 & n. 4. Thus, it appears to the Court that plaintiff takes issue not so much with this Court's reading of *Patterson* as with *Patterson*'s construction of section 1981.

Accordingly, the Court must conclude that the retaliatory conduct alleged in plaintiff's amended complaint fails to state a claim cognizable under 42 U.S.C. § 1981.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED, and plaintiff's claim under 42 U.S.C. § 1981 is DISMISSED. The only claim remaining is therefore plaintiff's claim under Title VII. Upon finding that the requirements of 42 U.S.C. § 2000e–5(f)(5) have been met in that this case has not been set for trial within 120 days of its filing, the above-captioned case is referred to Magistrate Kemp as a special master pursuant to 42 U.S.C. § 2000e–5(f)(5) and Fed.R.Civ.P. 53 to conduct a trial and any other necessary proceedings and to issue a report, including findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 53(e). Because this case has already been pretried, a meeting of counsel and the master need not be held pursuant to Fed.R.Civ.P. 53(d)(1) unless the master so directs.

IT IS SO ORDERED.