**Nancy SAHS, Plaintiff,**

v.

**AMARILLO EQUITY INVESTORS, INC., d/b/a Creekside Condominiums in Beaver Creek; Dean Lively and Matt Keppinger, Defendants.**

No. 87–B–1785.

United States District Court, D. Colorado.

Dec. 14, 1988.

Kathleen Mullen, Denver, Colo., for plaintiff.

Peter H. Rudy, Holland & Hart, Denver, Colo., for defendants.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

Plaintiff, Nancy Sahs (Sahs), commenced this action alleging sexual harassment and retaliatory firing in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq. Jurisdiction is based on 42 U.S.C. § 2000e et seq. (Civil Rights Act, as amended), 28 U.S.C. §§ 1331 (federal question), 1332 (diversity) and 1342 (civil rights). Upon the following findings of fact and conclusions of law the Court determines that although Sahs has met her burden of proving both claims, her sexual harassment claim is now moot.

## FINDINGS OF FACT

Sahs is a citizen of the State of Colorado. She is a member of a class of persons protected by Title VII of the Civil Rights Act of 1964.

In January 1985, Sahs was employed by Paragon Management Company (Paragon) to work at the Creekside Condominiums in Beaver Creek, Colorado (Creekside) as night and weekend desk clerk. She performed this job until she quit on April 15, 1985.

In October 1985, Sahs was hired by Amarillo Equity Investors, Inc. (AEI) as a chambermaid and front desk clerk at Creekside. Her pay was $6.00 per hour. On January 25, 1986, Sahs' pay was increased to $7.69 per hour.

AEI is a real estate management firm headquartered in Texas. It is an employer under the provisions of Title VII. Dean Lively (Lively) is the chairman of the board of AEI and the chief executive officer (CEO) of the corporation. He currently resides in Texas.

Paragon employed Matthew Keppinger (Keppinger) as resident manager of Creekside. In October 1985, AEI assumed Paragon's contract to perform management services at Creekside. When AEI assumed Paragon's management contract, Keppinger became an AEI employee. As the resident manager, Keppinger was Sahs' supervisor. Keppinger presently lives in Louisiana.

Bill Chudej (Chudej) was AEI's vice president for property management from October 1985 until April 1, 1986. Before October 1985, Chudej was a principal in Paragon. In both positions, Chudej was Keppinger's direct supervisor.

Other women who worked at Creekside at relevant times include April Wood Hancock (Wood), the executive housekeeper, Wendy Wotring Boomhower (Wotring), Dede Bose (Bose), and Eileen Coy (Coy), housekeepers. The Creekside staff was never informed of AEI's supervisory structure.

Neither Paragon nor AEI had promulgated any policies prohibiting sexual harassment of employees by supervisory personnel or established any complaint procedure for sexual harassment claims.

In October 1985, Coy called Lively at AEI headquarters. She told him that she was resigning due to her being "manhandled" by Keppinger. In late December 1985 or early January 1986, Sahs and Wood initiated a complaint about Keppinger's sexual harassment of themselves and other female workers at Creekside. Because they were unaware of AEI's proper chain of command, Sahs and Wood consulted Creekside's resident broker, Ed Swinford. Gordon Williams (Williams), the project developer and president of the Creekside Homeowners Association also was contacted.

In late January 1986, Williams informed Chudej about the women's complaints. Chudej did not travel to Creekside in January 1986 because of his scheduled back surgery. Rather, William's accountant, Bill Johnson went to Creekside to conduct an audit.

On February 14, 1986, Chudej and his assistant, Cruse Messer (Messer), went to Creekside to investigate the staff's complaints. These complaints were that Keppinger was intoxicated while on the job, required the staff to work more than 40 hours per week without paying overtime, stole property from condominium units, improperly managed homeowner trust accounts, improperly diverted company funds for personal use, and sexually harassed the female staff.

Chudej was onsite at Creekside for three days. Among other activities, Chudej conducted individual interviews of each staff member, interviews with some homeowners, and a group interview with the entire staff.

During the investigation, the female staff had lunch with Messer. They told her about Keppinger's sexual harassment of them.

Chudej had the female employees confront Keppinger directly with their specific charges of sexual harassment, despite their concern that Keppinger would retaliate against them. Although Chudej went to Creekside thinking it probable that he would fire Keppinger, and although he tended to believe the women's complaints,

Chudej claimed that he did not terminate Keppinger because it was their word against Keppinger's and there was no other "proof."

Although Chudej verbally reprimanded Keppinger, he took no meaningful action to prevent Keppinger from retaliating against the women.

The women did not report any specific incidents of sexual harassment after Chudej left Creekside. However, Keppinger's hostility toward them continued. During this time, Keppinger told the housekeepers to watch Sahs and that he intended to get rid of her.

When Chudej was at Creekside in mid-February 1986, Lively was staying at a Creekside condominium. Chudej and Lively spoke then but deny discussing Chudej's investigation.

On March 4, 1986, Lively and his wife, Tudi, were moving into their condominium unit at Creekside. Before March 4, 1986, Lively had little, if any, contact with Plaintiff. He had received no complaints regarding her work. However, on March 4, 1986, Lively told Sahs that her attitude was poor and that she had been rude to his wife. Sahs has denied this.

Later that day, Lively went to Creekside's front lobby looking for Keppinger. When Lively asked Sahs if she knew of Keppinger's whereabouts, Sahs responded that he was at the Hole in the Wall Saloon. Shortly thereafter, Keppinger entered the lobby carrying supplies. Lively then fired Sahs after conferring with Keppinger and Chudej. Lively's stated reason for Sahs' firing was that her attitude was poor and it was inappropriate for her to tell a Creekside homeowner that another employee was at a saloon during work. Sahs was given one week of severance pay. Wood was also fired by Keppinger on March 4, 1986.

Lively and Chudej deny having discussed Sahs' complaints of sexual harassment. However, Chudej's actions in this regard were inconsistent with his investigation of Keppinger in that: 1) he concurred immediately with Lively's recommendation that Sahs be fired; 2) he did not ask Sahs for

her version of the events about which Lively complained; 3) he required no other "proof" of Lively's allegations; and 4) Lively's complaint about Sahs was minor compared with those against Keppinger.

After her termination from Creekside, Sahs actively sought employment. In May 1988, she began a full time job as an insurance salesperson with J.C. Penney, Co. The present value of Sahs' income loss less her income earned for the period from March 4, 1986 to May 31, 1988, minus one week's severance pay, is $30,719.00.

AEI has now adopted and implemented written policies against sexual harassment in its workplace. These policies have been approved by the office the Colorado Attorney General. They are now being followed. There is no evidence that the present work environment is hostile and there is no reasonable expectation that prohibited conduct will recur.

## CONCLUSIONS OF LAW

### A.

To establish a prima facie case of retaliatory firing, the Plaintiff must show:

1. That she engaged in protected opposition to Title VII discrimination;

2. Adverse action by the employer subsequent to or contemporaneous with such employee activity;

3. A causal connection between the protected activity and the adverse employment action.

*Burrus v. United Telephone Co.*, 683 F.2d 339 (10th Cir.1982).

If a prima facie case is established, then the burden of going forward shifts to the employer to show legitimate, nondiscriminatory reasons for the dismissal. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The employer must present evidence sufficient to dispel the inference of retaliation by proving the existence of a legitimate reason. *Burrus v. United Telephone Co., supra.* If the employer carries this burden, the plaintiff may still prevail if by demonstrating that the employer's articu-

lated reason was a mere pretext for discrimination. *Id.*

Sahs' complaints of sexual harassment by Keppinger were a protected activity under Title VII. *See Burrus v. United Telephone Co., supra.* The evidence also shows that sixteen days after lodging her complaints, Sahs was fired by AEI's chairman of the board and CEO, Lively.

A causal connection may be proven by circumstantial evidence that justifies an inference of retaliatory motive. *Burrus v. United Telephone Co., supra* at 343. Lively fired Sahs sixteen days after Chudej's on-site investigation of her sexual harassment complaint and immediately after Lively had spoken with Chudej regarding her firing. "A showing by Plaintiff that she was discharged following protected activities of which the employer was aware establishes a prima facie case of retaliatory dismissal...." *Pedreyra v. Cornell Prescription Pharmacies*, 465 F.Supp 936, 948 (D.Colo.1979).

Defendants claim that Sahs was fired for the legitimate, non-discriminatory reason of poor attitude, disloyalty to the manager, and lack of cooperation. However, having observed and listened to the witnesses in this case, and from the direct and circumstantial evidence, the Court concludes that Defendants' reasons for Sahs' dismissal are merely pretextual. Thus, Sahs has established all three elements of a retaliatory firing.

Finally, the evidence established that Sahs exercised reasonable diligence in mitigating her damages. *See U.S. v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 20 F.E.P. 1345, 1358 (10th Cir.1979); *Pedreyra v. Cornell Prescription Pharmacies, supra* at 949.

### B.

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C.

§ 2000e–2(a)(1). A claim of "hostile environment" sex discrimination is actionable under Title VII. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

In order to establish a claim against an employer for a hostile work environment, a plaintiff must show that:

1. Plaintiff belongs to a protected group;

2. Plaintiff was subject to unwelcomed sexual harassment;

3. The harassment was based on plaintiff's sex;

4. The harassment was so pervasive that it altered the conditions of plaintiff's employment and created a hostile work environment; and

5. The employer is liable based upon applicable agency principles; that employer knew or should have known of the harassment and failed to take proper remedial action. *Meritor Savings Bank v. Vinson, supra.; Hicks v. Gates Rubber Co., supra.; Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982).

Hostile work environment sexual harassment arises when sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. *Meritor Savings Bank v. Vinson, supra.* Acts underlying a hostile environment claim do not have to be clearly sexual in nature. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987). However, such acts must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment. *Meritor Savings Bank v. Vinson, supra.* Whether the sexual conduct complained of is sufficiently pervasive to create a hostile work environment must be determined from the totality of the circumstances. *Hicks v. Gates Rubber Co., supra.*

■ Ordinarily, under Title VII the court may award a victorious plaintiff any equitable relief the court deems appropriate. *See* 42 U.S.C. § 200e–5(g). In a hostile environment case such as this, however, the court may only award equitable relief.

*Bundy v. Jackson,* 641 F.2d 934, 946 n. 12 (D.C.Cir.1981); *accord, Meritor Savings Bank v. Vinson,* 477 U.S. 57, 77, 106 S.Ct. 2399, 2411, 91 L.Ed.2d 49 (1986) (Marshall, J., concurring); *Valdez v. Church's Fried Chicken,* 683 F.Supp 596, 621 (W.D.Tex. 1988). Moreover, where, as here, interim events have eradicated the effects of the violation and there is no reasonable expectation that the violation will recur, the action for equitable relief is moot. *Valdez v. Church's Fried Chicken, supra, U.S. v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *See also Johansen v. City of Bartlesville,* 862 F.2d 1423 (10th Cir.1988).

Sahs has established her claim of hostile work environment. However, she is awarded damages for her retaliatory firing. In addition, Sahs, Keppinger, and Chudej no longer work for AEI, and Sahs does not seek reinstatement. Further, AEI has now taken proper remedial action by adopting an approved procedure for handling discrimination claims. Thus, there is no reasonable expectation that the challenged conduct will recur and equitable relief is unnecessary under the circumstances. Accordingly, Plaintiff's claim for equitable relief is moot.

### ORDER

IT IS ORDERED that judgment be entered for Plaintiff against Defendants, jointly and severally, for $30,719.00 together with interest thereon from the date of this judgment and costs, as allowed by law.

IT IS FURTHER ORDERED that pursuant to 42 U.S.C. § 2000e–5(k) Plaintiff be awarded reasonable attorney fees as part of her costs. The amount of the attorney fees will be determined by the Court based on Plaintiff's affidavits and Defendants' affidavits and response, unless Defendants request a hearing. Plaintiff's affidavits shall be submitted within ten days of the date of this judgment. Defendants' affidavits and response shall be filed ten days after Plaintiff's affidavits are filed.