Morris W. **WALLER**, Plaintiff,

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,**
Defendant.

No. 89–1050–C.

United States District Court,
D. Kansas.

July 23, 1991.

Stephen B. Plummer, Rumsey, Plummer & Rumsey, Wichita, Kan., for plaintiff.

Mikel L. Stout and Wyatt Wright, Foulston & Siefkin, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion for summary judgment. Plaintiff brings this race discrimination suit seeking relief under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, for the denial of promotions and transfers, unequal pay, and harassment. The request for oral argument is denied for it would not materially assist the court's decision on the motion.

■ Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12.

■ An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

■ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Though a court should be cautious to grant summary judgment in a discrimination case when intent is at issue, such motions are useful to weed out those claims and cases obviously lacking merit. *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988); *Schwenke v. Skaggs Alpha Beta, Inc.*, 858 F.2d 627, 628 (10th Cir.1988). Plaintiff must come forth with specific facts to show a genuine issue of material fact; mere assertions or conjecture as to intent or pretext is not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988).

This court's general practice is to set forth the uncontroverted facts gleaned from the parties' filings. In this case, the defendant's statement of facts are lengthy, taken in large part from the plaintiff's deposition, and uncontroverted for the most part. Consequently, the court adopts the defendant's statement and offers the following as a background summary of it.

In May of 1980, plaintiff, Morris W. Waller ("Waller"), was hired by Consolidated Freightways Corporation of Delaware ("CF") as a dock worker without any set or guaranteed hours of employment. He obtained seniority with the company later that summer and became a regular employee. In October of 1980, plaintiff applied for and received the position of dock foreman. Plaintiff's promotion was obtained on the recommendation of Wayne Urban, the terminal manager at the Wichita terminal.

As dock foreman, plaintiff was responsible for supervising the loading and unloading of freight, monitoring distribution of freight, handling customer relations, and controlling labor, claims and injuries. Plaintiff is presently a dock foreman for defendant. Neither his pay nor his benefits have been reduced throughout his employment. Instead, he has received periodic raises. His duties as dock foreman did not change when Gerald Chelgren became the terminal manager in the fall of 1980.

The first issue of fact appearing in the pretrial order is that plaintiff was unlawfully denied promotions to the position of

account manager at the Wichita terminal which were given instead to Matt Richards, Wayne Leach and Wayne Urban.

Matt Richards, a college graduate with some sales experience, was hired as account manager in 1983. Plaintiff had asked the terminal manager to be considered for the position given to Richards. Plaintiff never filed a grievance or complaint because of Richards' hiring. Waller testified that he asked Urban why he was not given this position and Urban told him that Wichita was not ready for a black account salesman.

In October of 1986, Richards resigned and the defendant advertised this opening in the newspaper. By plaintiff's request, he was interviewed for this position by Urban, the terminal manager, and Mike Maier, the division manager. Wayne Leach was selected for the position as he had been rated the top candidate during the interviews. Plaintiff believes discrimination is evidenced here by the facts that Leach was hired from outside the company, that plaintiff had six years with defendant, that defendant had a corporate policy which favored filling positions from within the company, and that the defendant violated the 1974 consent decree in this particular hiring.

In the spring and early summer of 1988, performance at the defendant's Wichita terminal was poor. The division manager first placed the terminal manager, Urban, on marginal status, which means the employee has not been meeting expectations and is not eligible for salary increases or promotions. Urban, in turn, placed the plaintiff and the other dock foreman, Ruple, on marginal status, believing them equally responsible for the terminal's poor performance. Plaintiff was on marginal status from June 1988 through March 10, 1989. Urban and Ruple were not taken off marginal status before March 10, 1989.[1]

In November of 1988, due to poor performance at the Wichita terminal, Chelgren was brought in as the Wichita terminal manager, and Urban was demoted to a second account manager in order that Urban's knowledge of and experience with the customer base in Wichita would not be lost. Plaintiff believes it was discriminatory to give Urban this position because Urban had promised him the next account manager position which came open after Leach was hired in 1986. Plaintiff does not know if another account manager was even needed at the time Urban was demoted into that position.

Another issue of fact in the pretrial order is: "Whether the defendant has engaged in unlawful and disparate treatment of, systematic exclusion of and discrimination against the plaintiff by failing to give him and allowing him to transfer into the following positions: ...." Following this issue, the pretrial order lists thirty-nine different people and their positions in approximately twenty different cities and seven different states.

In 1984 or 1985, plaintiff called division headquarters about a possible transfer to Kansas City. He was told there were no openings. Plaintiff testified in his deposition that he read about positions being filled and promotions in various terminals. Because no notice of those openings was given him, plaintiff learned of these available positions only when the new employment was announced over the defendant's teletype. As a result, plaintiff did not apply for any of these positions other than telling the terminal manager that he was willing to relocate if a promotion became available. Plaintiff had no other promotion discussions with defendant's management. Plaintiff never sent a letter requesting a transfer to Kansas City or anywhere else.

Plaintiff asserts that any promotion to terminal manager required some prior experience as an account manager. Plaintiff admits, however, it would be mere speculation to say that sometime after his promotion to account manager that he would have been promoted to terminal manager. If plaintiff had become an account manager, his pay would have increased slightly,

---

1. Plaintiff's deposition cite does not controvert this statement. Without a showing of how personal knowledge was gained on this matter, plaintiff's testimony on when Ruple and Urban were taken off marginal status can only be viewed as unsupported allegations.

his supervisory responsibilities would not have increased, he would not have been responsible for the dock workers, he would not have had any concerns with the budget, personnel or administration, and he would not have had any disciplinary responsibilities over other employees. His terms and conditions of employment would not have changed as he would have been subject to the same operations manual and the same supervision of the terminal manager.

On May 15, 1987, plaintiff filed a charge of discrimination against the defendant. Plaintiff alleged therein that because of his race he had been subject to racial slurs and harassment, he had been denied promotions, and he had been subjected to unequal terms and conditions of employment. Plaintiff testified that he had no particular promotion in mind when he filed this charge. Urban told plaintiff that his career with defendant was over after this charge was filed.

Another issue of fact in the pretrial order provides: "Whether the defendant terminated the plaintiff on March 10, 1989, because of his race and/or because he was exercising his lawful right to protest race discrimination in employment."

In January of 1989, Chelgren met with plaintiff and Ruple to discuss among other things their management and supervision styles. Chelgren notified them that another review would take place in 30–45 days. On March 10, 1989, Chelgren again met with Ruple and the plaintiff to discuss some problems with the terminal and possible solutions which had been listed in writing. After reading the document, plaintiff was asked to sign it below the statement: "I have read and understood the contents of this review." Plaintiff refused to sign the document even after Chelgren marked out the words, "and understand." At that point, Chelgren then terminated the plaintiff for refusing to sign and acknowledge the contents of the document. Plaintiff asserts his termination was in retaliation for his earlier filing of a discrimination charge. Before he was even asked to sign, plaintiff was told he would be returning to his normal foreman responsibilities from his temporary carpentry work around the terminal.

Among other things, the document presented to plaintiff for his signature recapped an earlier meeting:

You were told there was an indication of ineffectiveness as a direct supervisor over the dock labor and that the morale level of the dock workers was quite low and there was an ongoing level of anger toward you by the dock workers and as a result of your rudeness and/or practice methods of supervision. There was also clear discrimination toward terminal minority employees.

Plaintiff agreed that the morale of the dock workers was low, that there was "a lot of hostility" between the dock workers and him, and that the hostility did not increase when Chelgren came in the fall of 1988. Dock workers complained about plaintiff to management.

Plaintiff was reinstated as dock foreman and returned to work on April 4, 1989, at the same rate of pay and with all benefits restored. Defendant reimbursed him for the salary lost and his original seniority date was restored. Before he returned, plaintiff signed the above document. Plaintiff believes his termination was discriminatory because a dock worker told him a week before that he would be fired. Plaintiff also believes the termination was retaliatory because Chelgren told dock workers to report any complaints about plaintiff.

On April 18, 1987, plaintiff filed his second charge of discrimination. Plaintiff alleged he was terminated for not signing production standard letters and then was reinstated only after signing those letters. Plaintiff further alleged the defendant's actions were motivated by race discrimination and retaliation.

### 42 U.S.C. § 1981

**A.** *Discriminatory or Retaliatory discharge* [2]

■ The Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), held that 42 U.S.C. § 1981 prohibits racial dis-

---

**2.** The court reserves its discussion of the timeli-

ness issue for plaintiff's Title VII claims, since

crimination in the making and enforcing of contracts. The Tenth Circuit recently joined other circuit courts in construing *Patterson* to hold that a claim for discriminatory discharge cannot be brought under § 1981. *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 976 (10th Cir. 1991). The Tenth Circuit has also said that *Patterson* is to be applied retroactively. *Hill v. Goodyear Tire & Rubber, Inc.*, 918 F.2d 877, 879–80 (10th Cir.1990).[3] Defendant is entitled to summary judgment on plaintiff's § 1981 claim of retaliatory and discriminatory discharge.

### B. *Discriminatory Terms and Conditions*

■ The Supreme Court in *Patterson* considered the plain language of § 1981 to "not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 491 U.S. at 171, 109 S.Ct. at 2369. The Court concluded that § 1981 is not available for claims based on the terms and conditions of employment, such as racial harassment. 491 U.S. at 177, 109 S.Ct. at 2373. Applied retroactively, *Patterson* precludes all of plaintiff's § 1981 claims for discriminatory terms and conditions. See *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1386–87 (10th Cir.1991).

### C. *Discriminatory Denial of Promotions*

Plaintiff argues his claims for the defendant's failure to promote him to account manager in the Wichita terminal and the failure to transfer him to an account manager position in other terminals are unaffected by *Patterson*. Specifically, plaintiff believes his move to account manager would entail a "new contract" with defendant within the scope of § 1981. "[W]hether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. An actionable promotion "rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Id.* As an example of an actionable promotion, the Supreme Court cites the case of *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), where it was the promotion from associate to partner in a law firm. *Id.*

The Tenth Circuit has not tackled the question what is a "new and distinct relation." In this district, Chief Judge O'Connor has focused on "'whether the promotion would change the terms of the contractual relationship.'" *Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1473–74 (D.Kan.1990) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989))[4] (Evidence that promotion involved new duties and responsibilities and a higher salary created material issue of fact on whether promotion would have changed relationship); see also *Figures v. Bd. of Public*

---

the plaintiff's § 1981 claims cannot survive summary judgment on the remaining issues.

**3.** The Tenth Circuit in *Hill* reserved its opinion on whether an employee could bring a § 1981 retaliatory discharge claim based upon "advocating changes in conduct actionable under section 1981, *e.g.,* discriminatory hiring practices." 918 F.2d at 880 n. 3. In the instant case, plaintiff alleges he was retaliated against for challenging defendant's "policies, patterns and practices of racial discrimination." (Pretrial Order, Dk. 45 at 11). Plaintiff has failed to show that his actions "challenging" the defendant related to more than the terms and conditions of employment. Plaintiff's first administrative charge alleged racial harassment and the denial of promotions. Since neither action has been shown

to implicate the making or enforcing of contracts, plaintiff's retaliatory discharge claim is not actionable under § 1981. *Hill*, 918 F.2d at 880 n. 3.

**4.** Judge Posner in *Malhotra* suggested two possible interpretations of *Patterson*. Relying on the Court's reference to a "new contract" and the citation to *Hishon,* Judge Posner observed that "the focus of inquiry should be on whether the promotion would change the terms of the contractual relationship between the employee and employer." 885 F.2d at 1311. The other interpretation is broader as it looks to whether an outsider could apply for that position and could then bring a § 1981 claim if the position were denied. Chief Judge O'Connor has chosen the former interpretation, as have most courts.

*Utilities of Kansas City,* 731 F.Supp. 1479, 1482 (D.Kan.1990) (Summary judgment for defendant denied since plaintiff's promotion would have been a move to a non-bargaining unit management position); *Sims v. Bd. of Public Utilities of Kansas City,* No. 89–2328–O, 1991 WL 49792 (D.Kan. Mar. 28, 1991) (1991 U.S. Dist. Lexis 4583) (Potential change in salary and responsibilities would not substantially alter the relationship with employer). Judge Van Bebber of this district has also focused on the change in the terms of the contractual relationship. *Lee v. Farmers Ins. Co., Inc.,* No. 90–2181–V, 1991 WL 80134 (D.Kan. Apr. 15, 1991).

■ Of those federal courts that have struggled with the "new and distinct relation" test, most have used a functional approach which evaluates the change in such factors as manner and level of pay, required qualifications, responsibilities, functions and status. *Stradford v. Rockwell Intern. Corp.,* 755 F.Supp. 760, 764 (S.D.Ohio 1991); *Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. 1548, 1556 (E.D.N.Y.1990) (and cases cited in each). These factors are balanced considering the number of factors affected by the promotion, the magnitude of change in the individual factors, and the overall effect of the changes. *Hudgens v. Harper–Grace Hospitals,* 728 F.Supp. 1321, 1325 (E.D.Mich.1990).

Even if the relevant factors and general approach for balancing them are known, the question remains what degree of change is necessary before the court can say a new contract or a new and distinct relation would have been formed. Some courts have said the change in the employment relationship must be a "fundamental" one as distinguished from garden-variety or routine advancements or raises. *Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 196 (S.D.N.Y.1990); *Byrd v. Pyle,* 728 F.Supp. 1, 2 (D.D.C.1989), *vacated on other grounds,* 902 F.2d 962 (D.C.Cir.1990) ("[I]ncreased pay and responsibility, standing alone, do establish the *Patterson* threshold. . . ."); *Holt v. Mi-*

*chigan Dept. of Corrections,* No. 90–CV–904, —— F.Supp. —— (W.D.Mich. May 31, 1991) ("This court believes these factors provide an excellent basis for determining whether a fundamental and distinct change in the contractual relationship between the employer and the employee would have occurred. . . ."); see, e.g., *Williams v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1004, 1009 (S.D.N.Y.1990) (Promotion from assistant bank manager, a bank employee position, to assistant treasurer, a bank officer position was actionable under § 1981, but the promotion from assistant bank manager to branch manager was not); *Crader v. Concordia College,* 724 F.Supp. 558, 561–63 (N.D.Ill.1989) (A move from assistant director to director of housekeeping, though possibly representing a substantial increase in responsibility and authority, did not fundamentally change the "quality" of the employment relationship).

Rather than defining or labelling the degree of change which meets the *Patterson* test, other courts have used a fact-specific analysis that focuses on the degree of differences. The results reached by these courts can be summarized under some general rules. Promotions from a nonsupervisory to a supervisory promotion is actionable. See, e.g., *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989) (Billing clerk to department supervisor); *Toliver v. Sullivan Diagnostic Treatment Center,* 748 F.Supp. 223 (S.D.N.Y.1990) (counselor to program supervisor); *Luna v. City and County of Denver,* 718 F.Supp. 854, 856–57 (D.Colo. 1989) (project inspector to engineer). A change in pay or title with other significant changes satisfies *Patterson.* See e.g. *Hudgens,* 728 F.Supp. at 1325–26 (actionable promotion from supervisor to analyst as involved different pay, qualifications, and responsibilities); *Miller v. Shawmut Bank of Boston,* 726 F.Supp. 337, 341 (D.Mass.1989) (customer services representative to personal banker). Routine promotions entailing increased pay or nominal title changes without any accompanying increase in responsibility or authority fail the *Patterson* yardstick. *Adames v.*

*Mitsubishi Bank, Ltd.,* 751 F.Supp. at 1556.

While both approaches are concerned with the changes reflected through the factors, the courts using the latter approach sometimes have been content with the fact that changes have occurred, but the former approach requires the courts to expect something more. This court joins those believing that the Supreme Court intended to require something more in the form of a fundamental change in the employment relationship.

■ The promotion exception recognized in *Patterson* is a limited one. *Stradford v. Rockwell Intern. Corp.,* 755 F.Supp. at 765; *Holt,* —— F.Supp. at ——–——. The Supreme Court applied the rule of construction that a court "should be reluctant to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute." 491 U.S. at 181, 109 S.Ct. at 2375 (citation omitted). The Court went on to explain that the overlap between § 1981 and Title VII on refusal to hire claims made sense, because "[a]t this stage of the employee-employer relation Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a relation to salvage." 491 U.S. at 182, 109 S.Ct. at 2375. The Court also said the court of appeals had "overstate[d] the case" in saying " '[c]laims of racially discriminatory ... promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection.' " 491 U.S. at 185, 109 S.Ct. at 2377. In short, not all promotions are protected by § 1981, and there is no need to construe § 1981 broadly as Title VII offers a remedial scheme for all claims of racial discrimination in promotions.

■ An actionable promotion is not one that can be implied from the parties' original contract. The promotion must involve "the opportunity to enter into a new contract with the employer." *Id.* In other words, the basic terms of the contractual relationship between the employer and employee must be so affected as to necessitate or create a new contract.

■ Finally, an actionable promotion must leave the parties in a "new and distinct relation." 491 U.S. at 185, 109 S.Ct. at 2377. The Supreme Court cautioned lower courts to read fairly and naturally and to not strain the phrase in § 1981, "the same right ... to make ... contracts." The court then used the "new and distinct relation" language and cited as an example the *Hishon* case. The example is instructive. In moving from an associate to a partner in a law firm, an individual acquires an ownership interest in the law firm, assumes a direct role in and personal liability for the firm's affairs, begins supervising and taking responsibility for the associates, and realizes an increase in compensation and benefits and a change in the manner of how they are paid and computed. See *Harrison v. Associates Corp. of North America,* 917 F.2d 195, 198 (5th Cir.1990). The cite to *Hishon* evidences the Court's intent to read § 1981 as being available for only those promotions involving a fundamental change. *Byrd,* 728 F.Supp. at 2.

■ The parties do not discuss whether the issue of a new and distinct relation is one of fact for the jury or one of law for the court. The Supreme Court in *Patterson* did not address this procedural matter. Some courts have denied summary judgment motions for the reason that a genuine issue of fact remained on whether the promotion would have created a new and distinct relation. See *Dash v. Equitable Life Assurance Soc. of U.S.,* 753 F.Supp. 1062, 1068–69 (E.D.N.Y.1990); *Figures,* 731 F.Supp. at 1482. This court need not add its opinion on this issue, since it can find as a matter of law that the promotion to account manager would not create a new and distinct relation.

The uncontroverted facts here are that plaintiff's move to account manager would not have changed the terms and conditions of his employment. As dock foreman, he was already in a managerial position. An account manager was subject to the same operations manual and the same supervision of the terminal manager. Supervisory responsibilities of an account manager were less than those of a dock foreman.

In arguing a new and distinct relationship would be created, plaintiff points to only two facts. As account manager, he would have received a pay raise and could have been considered for a terminal manager opening. Neither fact raises a genuine issue of material fact. A salary increase without some concomitant change in responsibilities or duties is not enough. *Harrison v. Associates Corp. of North America*, 917 F.2d at 198. Higher pay is the typical outcome of any promotion. A promotion that opens the door to more advancement does not necessarily establish a new and distinct relation. Plaintiff's argument reveals that his move to account manager was part of the ordinary progression of an employee in the management track. "As such, it is not within the ambit of protection given by section 1981." *Carter v. South Cent. Bell*, 912 F.2d 832, 840, (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); see *Stradford*, 755 F.Supp. at 765 (Transfer to a substantially similar position creates no new or distinct relation merely because it has a greater potential for subsequent promotions). Routine promotions are generally a matter of steps or increases. Furthermore, transfers to comparable positions located elsewhere are not actionable under *Patterson* since they do not carry any increases in pay, authority or responsibility. *Adames*, 751 F.Supp. at 1557 (and cases cited therein). Defendant is granted summary judgment on plaintiff's § 1981 promotion claims.

### 42 U.S.C. § 2000e (Title VII)

A. *Timeliness of Claims Arising Before September 17, 1986*

In a deferral state, the claimant may institute proceedings with a state or local agency having the authority to grant or seek relief and then must file a discrimination charge with the EEOC within 300 days of the alleged unlawful employment practice. *E.E.O.C. v. Commercial Office Products Co.*, 486 U.S. 107, 110, 108 S.Ct. 1666, 1668–69, 100 L.Ed.2d 96 (1988). Title VII mandates that no charge may be filed with the EEOC until 60 days have passed from the filing of proceedings with the state or local agency. 42 U.S.C. § 2000e–5(c). Consequently, the claimant must file the charge with the state or local agency or have it referred by the EEOC within 240 days of the unlawful employment practice. *Commercial Office Products*, 486 U.S. at 111, 108 S.Ct. at 1669.[5] Having filed his first charge of discrimination on May 15, 1987, plaintiff agrees his claims for discriminatory acts occurring before September 17, 1986, are barred unless saved by the continuing violation doctrine.

Under this doctrine, the plaintiff must show a continuing policy and practice of discrimination by defendant within the statutory filing period. *Bruno v. Western Elec. Co.*, 829 F.2d 957, 960 (10th Cir.1987). Plaintiff must show that the policy or practice was actually applied during the period and that what is occurring is not just the continuing or lingering effect from an earlier practice. *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir.1987). A continuing violation may be established by "either a company-wide policy of discrimination or a series of related acts taken against a single individual." *Bruno*, 829 F.2d at 961. The continuing violation doctrine cannot make actionable isolated, discrete or unrelated acts of discrimination that have occurred outside the statutory period. *Allen v. Denver Public School Bd.*, 928 F.2d 978, 984 (10th Cir.1991). Whether incidents are suffi-

---

**5.** A filing with the state or local agency past the 240–day period may still be timely if that agency terminates its proceedings before the 300 days. *Commercial Office Products*, 486 U.S. at 111–12, 108 S.Ct. at 1669–70. The Supreme Court in *Commercial Office Products* held that the state agency terminates its proceedings by waiving the 60–day deferral period. 486 U.S. at 115–22, 108 S.Ct. at 1671–75. Consequently, the rule has been stated that a Title VII claimant generally must file the discrimination charge with the state or local agency or the EEOC within 300 days of the employment discrimination. *Peterson v. City of Wichita, Kan.*, 888 F.2d 1307, 1308 (10th Cir.1990), *cert. denied*, —— U.S. ——, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Laughinghouse v. Risser*, 754 F.Supp. 836, 839 (D.Kan.1990). With sixty more days, the bar date is pushed back to July 18, 1986.

ciently related to be termed a continuing violation is determined from the facts of each case considering, in particular, if the acts involve the same type of discrimination, if the acts recur with such frequency so as not to be isolated, and if the acts have a degree of permanence which should notify the employee to assert his or her rights or should indicate to the employee that the consequences of the act will continue whether or not the employer's intent to discriminate is a continuing one. *Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983) (cited in *Harman v. City of Larned, Kansas*, No. 90–4167–S, 1991 WL 49742 (D.Kan. Mar. 25, 1991) (1991 U.S. Dist. LEXIS 4285)).

■ Permanence is the most important inquiry. *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1550 (11th Cir. 1988). The court inquires into when and to what extent the plaintiff knew or should have known of the discriminatory act at the time it occurred. *Sabree v. United Broth. of Carpenters and Joiners*, 921 F.2d 396, 402 (1st Cir.1990). The First Circuit recently observed:

"A claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the [300] day limitation period." *Roberts*, 850 F.2d at 1550. It is this factor that is the undoing of Sabree, for he has admitted that he believed, at every turn, that he was being discriminated against. A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. (citation omitted). After all, "[e]mployers as well as employees are entitled to procedural safeguards in the precincts patrolled by Title VII." (citation omitted).

921 F.2d at 402.

The Tenth Circuit has described another rationale for the continuing violation doctrine:

Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer. On occasion, even after notification of an adverse employment decision, an employee may be affected by a continuing policy maintained by the employer that may discriminate against the employee throughout his relationship with the employer. A continuing discriminatory policy and practice may deter employees from filing a charge with the EEOC within the filing period because the employees may feel threatened by reprisals from the employer. Recognizing this fear, courts have allowed employees to file a charge with the EEOC as a result of a continuing violation, even though the employee may have been affected much earlier by an adverse employment decision and the limitations period from that date had already run.

*Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 614 (10th Cir.1988) (citations omitted). If this rationale is served by the facts of the case, the doctrine will not be applied. *Id.* There is an obvious tension between the rationale stated in *Gray* and the rationale furthered by the permanence inquiry. For example, an employee may know he or she was the victim of discrimination but waits to file out of fear of reprisal. The Tenth Circuit has not offered guidance on balancing these competing rationales. However, if the statute of limitations is to have any value, the balance must ultimately favor requiring an employee to act on his knowledge rather than allowing an employee to wait until all risk of reprisal is gone.

■ As to plaintiff's promotion claims, the only ones occurring within the filing period are the account manager positions given to Leach and Urban. The Tenth Circuit has recognized a continuing violation in promotion claims where the entire system of promotions is being challenged, *Rich v. Martin Marietta Corporation*, 522 F.2d 333, 348 (10th Cir.1975), or where the plaintiff alleges nonpromotions over a period of time, *Higgins v. State of Okl. ex rel. Okl. Emp. Sec.*, 642 F.2d 1199, 1200 n. 2

(10th Cir.1981). Plaintiff alleges the defendant's management denied him the position of account manager on each occasion by reason of his race. The passing of time between those promotions and the promotional transfers is not so large as to make them isolated or discrete. Plaintiff, however, has testified that at the time each of the promotions was denied him he believed that the reason was race discrimination. On the other hand, based on assurances made by defendant's management in 1983, plaintiff was hopeful that he would receive the next opening in account manager and reasonably could have feared losing that opportunity if he had filed charges before the next opening occurred. Viewing the facts in the light most favorable to the plaintiff, the court believes a trier of fact could reasonably find a continuing violation under these facts for plaintiff's promotion and transfer[6] claims.

## B. *Promotion Claims*

 Under the scheme of proof enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the plaintiff has the initial burden of showing by a preponderance of the evidence the following prima facie case of discrimination:

1. That he belongs to a protected class;

2. That he applied and was qualified for the available position or promotion;

3. That he was rejected; and

4. That after the rejection, the employer continued to seek applicants or filled the position with a white employee.

*Patterson v. McLean Credit Union,* 491 U.S. at 186–87, 109 S.Ct. at 2377–78.[7]

 Defendant argues that while plaintiff requested an interview for the position given to Richards in 1983, he never actually applied for the opening. This argument overstates a distinction that cannot be accurately drawn until all the evidence is heard. Moreover, the evidence of record does not support defendant's argument. Plaintiff asked his supervisor to be interviewed for the position. His supervisor was in charge of the interviewing and hiring for this position. The supervisor told plaintiff that he was not qualified and that Wichita was not ready for a black salesman. An issue of fact exists as to whether plaintiff applied for the position.

Defendant next contends the plaintiff was not qualified for the account manager position given to Urban in 1988 because he was on marginal status and not eligible for promotion. Plaintiff has not directly responded to this argument. On the other hand, plaintiff has challenged the act of placing him on marginal status as race discrimination. For reasons stated later, plaintiff is unable to present a prima facie case of race discrimination in the discipli-

---

6. Defendant also challenges plaintiff's transfer claims as not having been the subject of an administrative charge. This argument is one of semantics for the alleged discriminatory transfers would have been a promotion for the plaintiff in almost every instance. For that reason, plaintiff's transfer claims are reasonably related to, if not actually asserted in, the administrative charge.

7. There appears some confusion in this circuit over the fourth element. In 1984 and 1985, the Tenth Circuit required the plaintiff to show at the prima facie stage that he or she "was equally or better qualified than those employees actually promoted." *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 701 (10th Cir.1984); see also *Foster v. MCI Telecommunications Corp.,* 773 F.2d 1116 (10th Cir.1985) (plaintiff must show in his prima facie case that he was as qualified as the retained employees). In

1988, the Tenth Circuit rejected this additional qualifications requirement as an inaccurate reading of Supreme Court precedent. *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 n. 6 (10th Cir.1988); see, e.g., *Furr v. AT & T Technologies, Inc.,* 824 F.2d at 1542. In a recent case, the Tenth Circuit has relied upon the qualification language found in the *Clark* decision. *Allen,* 928 F.2d at 984. The Supreme Court in *Patterson* put to rest the question whether the relative qualifications of the plaintiff and the person eventually hired are a matter for the prima facie case. The Court addressed the question of relative qualifications at the stage of the employer rebutting the plaintiff's prima facie case. The Court also made clear that a plaintiff is not required to prove better qualifications but may show pretext in a number of other ways. 491 U.S. at 187–88, 109 S.Ct. at 2378–79.

nary action of putting him on marginal status. Consequently, defendant is entitled to summary judgment on the Urban promotion claim.

 If plaintiff makes a prima facie case, the burden of production then shifts to the defendant employer to rebut the inference of discrimination by either disputing the plaintiff's facts or by articulating a legitimate, nondiscriminatory reason for its actions. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1160 (10th Cir.1991). "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096 (citation omitted). Once the inference of discrimination is rebutted, the plaintiff retains the ultimate burden of persuading the factfinder on intentional discrimination. *Patterson*, 491 U.S. at 187, 109 S.Ct. at 2378. Plaintiff must show the defendant's stated reasons are pretextual by showing either that racial discrimination actually motivated the employer or that the reasons lack credence. *Drake*, 927 F.2d at 1160. In *Patterson*, the Court said plaintiff could show pretext in any number of ways including evidence that plaintiff was better qualified than the person chosen or that plaintiff was poorly treated in the past as in other instances of racial harassment or denial of proper training. 491 U.S. at 187–88, 109 S.Ct. at 2378–79. The Court explained that it was not saying this evidence would necessarily prove discrimination. Instead, the Court made clear that a plaintiff was not required to prove pretext in any particular way such as proving he was better qualified. *Id.* at 188, 109 S.Ct. at 2378.

 Defendant asserts plaintiff was denied the account manager positions given to Leach and Urban because plaintiff had poor supervisory and interpersonal skills, plaintiff lacked sales experience, and Leach and Urban were more experienced and better qualified. Plaintiff considers any inquiry beyond the defendant's articulation of its legitimate reasons inappropriate for summary judgment. Having raised an inference of discrimination through his prima facie case, plaintiff believes his burden in defending against a summary judgment motion has been met. Plaintiff is mistaken. "In a summary judgment setting, the plaintiff must raise a genuine factual question as to whether defendants' reasons are pretextual." *Drake*, 927 F.2d at 1160 (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir.1985), *modified*, 784 F.2d 1407 (9th Cir.1986).

Plaintiff has raised a genuine factual issue concerning defendant's true reasons for giving Leach the position of account manager. Defendant ignored its company policy of hiring from within the company. Urban was one of the two interviewers for the position. Urban had told plaintiff in 1983 that Wichita was not ready for a black salesman. After Leach was hired, plaintiff asked Urban why the position was not given to him and Urban replied that he "talk[ed] too black."

 Plaintiff has failed to raise a genuine factual issue concerning the defendant's true reasons for demoting Urban to the position of account manager. Disappointed with the performance at the Wichita terminal, Maier demoted Urban from terminal to a second account manager and made Chelgren the terminal manager. Instead of losing Urban's experience and knowledge, defendant created a position for him. Plaintiff has not shown these reasons to be a pretext or to be without credence. Defendant is entitled to summary judgment on plaintiff's Title VII promotion claim based on the account manager position given to Urban.

## C. *Disparate Compensation Claim*

Plaintiff, in his response to defendant's motion, voluntarily dismisses this claim.

## D. *Discriminatory Transfer Claims*

 As to the 39 transfers/promotions listed in the pretrial order, defendant contends plaintiff cannot make a prima facie case because he never applied for those positions. Plaintiff responds that he should be able to bring suit despite the lack of applications because he never had prior notice of those openings. Defendant de-

nies any obligation to post notice in the Wichita terminal regarding openings in other terminals. Plaintiff then cites several decisions that have found an employer to be in violation of Title VII by not posting job openings in order to promote the continued existence of a predominantly white work force. Plaintiff has not come forth with any evidence regarding the composition of defendant's work force. Plaintiff points to nothing in defendant's policy requiring such notice. Plaintiff presents no evidence to support the conclusory allegation that racial discrimination is likely to occur or to continue by not posting notices in one terminal of job openings in other terminals. Defendant is granted summary judgment on plaintiff's Title VII claims for denial of promotion/transfers listed at pages three, four and five of the pretrial order.

### E. *Discriminatory Discipline Claim*

 A prima facie case of discrimination for such a claim entails:

1. Plaintiff is a member of a protected class;
2. A company policy or practice existed on the activity for which plaintiff was disciplined;
3. Nonminority employees either were held to a more lenient practice or were not held in compliance with strict company policy; and
4. Plaintiff was disciplined without the benefit of the lenient practice or in conformity with the strict policy.

*Moore v. Norfolk and Western Ry. Co.,* 731 F.Supp. 1015, 1018 (D.Kan.1990). Plaintiff concedes that "[i]f all three employees had been placed on marginal status and had remained on marginal status for the same length of time, Plaintiff would not have a legitimate complaint here." From the admissible evidence of record, the uncontroverted facts are that Waller and two nonminority employees, Urban and Ruple, were placed on marginal status and that Urban and Ruple were not removed from that status before the plaintiff. Plaintiff's assignment to carpentry duties has not been shown to be a disciplinary

measure. Defendant has articulated legitimate nondiscriminatory reasons for temporarily assigning plaintiff to those responsibilities, and plaintiff has failed to present a genuine issue of fact on pretext. Defendant's motion is granted on this claim.

### F. *Termination Claims*

 This claim concerns plaintiff's termination from March 10, 1989, to April 4, 1989. He alleges the termination was motivated by race discrimination and retaliation for his earlier EEOC discrimination charge. On his Title VII claims, plaintiff seeks relief in the form of backpay, an order enjoining defendant from continuing or maintaining any policies of race discrimination, and costs and attorney's fees. When plaintiff returned to work on April 4, his pay and all other benefits were restored. Success at trial on this claim would not provide plaintiff with any award of backpay. As a result, defendant argues these claims are moot. Without explanation or elaboration, plaintiff denies that his claim is moot and that the harm has been remedied.

Since compensatory and punitive damages are not recoverable under Title VII, his reinstatement with all benefits and pay restored gave him the full extent of relief available under the law. See *Bartel v. U.S., F.A.A.,* 664 F.Supp. 669, 673 (E.D.N.Y.1987) (Title VII). Plaintiff does not indicate what equitable relief, if any, he seeks on his termination claim. Nor does this court have the responsibility to make such a claim on behalf of the plaintiff. Without knowing the extent of the equitable relief, if any, being sought by this claim, the court is unable to find a reasonable expectation that the defendant will terminate plaintiff again for discriminatory reasons and that equitable relief would be appropriate to prevent this from recurring. See *Johansen v. City of Bartlesville, Okl.,* 862 F.2d 1423, 1427 (10th Cir.1988); *Sahs v. Amarillo Equity Investors, Inc.,* 702 F.Supp. 256, 260 (D.Colo.1988). The mere theoretical possibility of recurrence is not enough. *Johansen,* 862 F.2d at 1426. Furthermore, any subsequent discriminatory termination of plaintiff would not escape review and redress for nothing prevents

plaintiff from filing additional discrimination charges. The court grants defendant's motion on plaintiff's termination claim.

## G. *Racial Harassment Claim*

In his response to defendant's motion, plaintiff says that he hereby dismisses this claim.

## H. *Other Alleged Discriminatory Acts*

Defendant levies a number of attacks on varied allegations of discrimination that plaintiff testified to in his deposition. Plaintiff essentially responds that the events or incidents mentioned by defendant are not claims for relief but may be used at trial as evidence of intentional discrimination. The court grants defendant's motion that these other allegations are not claims for relief in this case.

## I. *1974 Partial Consent Decree Claim*

Plaintiff concedes that he cannot bring in this court a claim for the defendant's breach or violation of this consent decree. Defendant's motion is sustained.

## J. *Award of Backpay*

Plaintiff concedes that recovery of backpay under Title VII is limited to the two years preceding his filing of the charge of discrimination.

## PENDENT CLAIMS

In his response, plaintiff dismisses his claim for wrongful termination and his claim under the Kansas Act Against Discrimination. Based upon these dismissals and a reasonable reading of the pretrial order, the court finds that plaintiff has no other pendent state law claims pending.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dk. 54) is granted in part and denied in part;

IT IS FURTHER ORDERED that the only claims remaining for trial are plaintiff's Title VII promotion claims concerning the account manager positions given to Leach and Richards.